IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| MID-CONTINENT CASUALTY CO. | § | |
| | § | CASE NO. 5:19-cv-975 |
| v. | § | _____ |
| | § | |
| DABNEY HOMES, LLC | § | |

## COMPLAINT

TO THE HONORABLE UNITED STATES DISTRICT COURT:

Mid-Continent Casualty Company petitions this Court, pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201 and Federal Rule of Civil Procedure 57, for construction of an insurance policy, and a declaration that Mid-Continent owes no duty to defend or to indemnify Dabney Homes, L.L.C., for any judgment or other obligation to Suzanne Gazda, MD, and for cause of action respectfully would show the following:

## PARTIES

1.      Plaintiff Mid-Continent Casualty Company ("Mid-Continent") is an Ohio corporation with its principal place of business at 1437 Boulder Avenue, Tulsa, Oklahoma.

2.      Defendant Dabney Homes, L.L.C., is an entity based and doing business in Texas, which has failed to maintain its registered agent's address, and so may be served with process by serving its president and registered agent Jack H. Dabney at 302 Wildrose, San Antonio, Texas 78209, or at 5007 McCullough Ave., San Antonio, Texas 78212, or wherever he may be found.

## JURISDICTION

3.      This Court has jurisdiction pursuant to 28 U.S.C. § 1332(a) because there is complete diversity of citizenship between the Plaintiff and Defendant, and the amount in controversy, exclusive of interest and costs, exceeds $75,000.

## VENUE

4.      Venue is proper in this Court because the facts giving rise to this claim occurred in this district.

## FACTS

5.      Mid-Continent issued a Commercial General Liability Policy of insurance to Dabney Homes, LLC, Policy Number 04-GL-005000848, for the period of 04/27/2017 to 04/27/2018 ("the Policy").  The Policy provides limits of liability of $1,000,000.00 for each occurrence, $2,000,000.00 General Aggregate (other than products-completed operations), and $2,000,000.00 for Products-Completed Operations, along with a $2,500.00 property damage liability deductible per claim (CG 0300 01/96), subject to all policy terms, conditions, and exclusions.

6.      On June 5, 2019, Suzanne Gazda, MD ("Gazda"), filed her First Amended Petition ("First Amended Petition"), in Cause No. 2019CI07016, 408th Judicial District Court, Bexar County, Texas (the "*Gazda* lawsuit"). *See* Attachment 1. In the *Gazda* lawsuit, Gazda seeks monetary relief of over $1,000,000. The *Gazda* lawsuit alleges that Gazda purchased the property located at 333 Rosemary, San Antonio, Texas 78209 ("the Property") for $1,550,000.00 from Jack H. Dabney with Dabney Homes, LLC ("Dabney"), in February 2018.

7.     The *Gazda* lawsuit alleges, without limitation, that at the time of the purchase Dabney made affirmative misrepresentations, including, but not limited to, that there were no defects or malfunctions in the drainage, that there were no defects or malfunctions in the structural components, and that he was not aware of any condition on the property which would materially affect the health or safety of an individual. The *Gazda* lawsuit alleges Dabney as seller failed to disclose known defects regarding the Property, and that Dabney as seller also knowingly failed to disclose a murder/suicide that occurred at the Property in 1999. The *Gazda* lawsuit further complains of water damage to parts of the house and mold contamination at the Property, including specific mold species of particular concern, *Aspergillus flavus*, *A. fumigatus*, *A. niger*, *A. penicillioides*, *A. restrictus*, *A. sydowii*, *A. terreus*, *A. versicolor*, *Aureobasidium pullulans*, *Cladosporium sphaerospermum*, *P. crustosum*, *P. variabile*, and *Wallemia sebi*, and related illness of its occupants, including Gazda.

7.     The *Gazda* lawsuit alleges, without limitation, that "[b]ecause of the elevated levels of mold and the water and mold damage, the home will require remediation which could include the following:

    a.    Reconstruction of the crawl space to eliminate buried siding and skirts that are not designed for ground contact and potential water contact;

    b.    Provision for drainage and ventilation of the lower crawl space;

    c.    Reconstruction of the west drainage channel;

    d.    Removal of foam insulation and remediation of subflooring surfaces exposed in the crawl spaces for the north area and downstairs area;

    e.    Removal of rotten wood in the lower crawl space;

f.    Construction of a sealed entry with decontamination chamber to the crawl space;

g.    Evaluation of water resistance and potential repair of the south wall of the downstairs area;

h.    Containment of chases to prevent crawl space air from traveling up these spaces into living areas and the attic spaces above;

i.    Remediation of wall cavities in the north area;

j.    Reconstruction of the west walls of the master suite to eliminate moisture intrusion and to eliminate wall finish and trim materials that are apparently in contact with the unsealed concrete curb;

k.    Removal of wood flooring and drying of the concrete slab;

l.    Redesign of air distribution for the two air-conditioning systems;

m.    Redesign of drainage from the pool and pool deck; this may require redesign of the roof drainage.

The *Gazda* lawsuit further contends that Dabney "was aware of the deficient drainage and construction techniques which cause or contribute to the problems being experienced by Dr. Gazda."

8.    Based on the factual background in the First Amended Petition, digested above, Gazda alleges causes of action for breach of contract, common law fraud, and fraud in a real estate transaction, accusing Dabney of knowingly or recklessly making misrepresentations and non-disclosures to induce Gazda to buy the Property. Gazda alleges she relied on the misrepresentations and non-disclosures to her detriment and to Dabney's benefit. Gazda additionally alleges claims for negligence or negligent misrepresentation and claims for knowing violation of the Texas Deceptive Trade

Practices Act, arising from the same alleged wrongful acts and omissions, including false, misleading or deceptive acts or practices, unconscionable actions, and breach of express or implied warranty. Gazda seeks rescission, damages, and/or restoration of money received by Dabney, along with attorney's fees. Gazda's prayer for relief includes "actual damages, economic damages, consequential damages, special damages, attorney's fees, pre-judgment interest, postjudgment interest, [and] taxable court costs[.]"

## CAUSES OF ACTION

9.      Mid-Continent initially was provided a demand letter that Gazda addressed to Dabney. Mid-Continent issued a reservation of rights. Subsequently Gazda filed Plaintiff's Original Petition in the *Gazda* lawsuit, but on information and belief it was never served on Dabney. Gazda also filed the First Amended Petition in the *Gazda* lawsuit, which Dabney provided to Mid-Continent. Mid-Continent now seeks the Court's declaration that it owes no duty to defend or to indemnify Dabney for any damages that may be awarded in the *Gazda* lawsuit, because the claims in the *Gazda* lawsuit fall outside the scope of the insuring agreement and/or within the terms of applicable policy exclusions, as set out in pertinent part below.

10.     The Policy's insuring agreement provides, in summary, that Mid-Continent will pay those sums that the insured becomes legally obligated to pay *as damages* because of "bodily injury" or "property damage" to which the insurance provided by the Policy applies. Mid-Continent has the right and duty to defend the insured against any "suit" seeking those damages, but it will have no duty to defend the insured against any

"suit" seeking damages for "bodily injury" or "property damage" to which the insurance does not apply.

11.    The Policy includes the following relevant definitions, in pertinent part, among others:

**"Bodily Injury"** means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

**"Defective Work"** means "Your Work" that is defective, deficient, non-conforming, not in accordance with plans and specifications, fails to satisfy applicable building code(s), fails to meet industry practice standards, is not fit for its intended use, not performed in a workmanlike manner or is faulty, and is included in the products-completed operations hazard.

**"Employee"** includes a "leased worker." "Employee" does not include a "temporary worker."

**"Impaired Property"** means tangible property, other than "your product" or "your  work", that cannot be used or is less useful because:

**a.**    It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

**b.**    You have failed to fulfill the terms of a contract or agreement;

if such property can be restored to use by the repair, replacement, adjustment or removal of "your product" or "your work" or your fulfilling the terms of the contract or agreement.

**"Insured Contract"** means:

**f.**    That part of any other contract or agreement pertaining to your business . . . under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization, provided the "bodily injury" or "property damage" is caused, in whole or in part, by you or by those acting on your behalf. However, such part of a contract or agreement shall only be considered an "insured contract" to the extent your assumption of the tort liability is permitted by law. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

Paragraph **f.** does not include that part of any contract or agreement:

**(2)** That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

    **(a)** Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

    **(b)** Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

**"Leased Worker"** means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

**"Occurrence"** means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

**"Pollutants"** mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

**"Products-Completed Operations Hazard":**

**a.** Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

    **(1)** Products that are still in your physical possession; or

    **(2)** Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

        **(a)** When all of the work called for in your contract has been completed.

        **(b)** When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

**(c)** When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

**b.** Does not include "bodily injury" or "property damage" arising out of:

**(1)** The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any insured;

**(2)** The existence of tools, uninstalled equipment or abandoned or unused materials; or

**(3)** Products or operations for which the classification, listed in the Declarations or in a policy Schedule, states that products-completed operations are subject to the General Aggregate Limit.

**"Property Damage"** means:

**a.** Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

**b.** Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

**"Suit"** means a civil proceeding in which damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies are alleged. "Suit" includes:

**a.** An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

**b.** Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

**"Temporary worker"** means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

**"Your Product":**

**a.**    Means:

   **(1)**    Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

   **(a)**    You;
   **(b)**    Others trading under your name; or
   **(c)**    A person or organization whose business or assets you have acquired; and

**b.**    Includes:

   **(1)**    Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

   **(2)**    The providing of or failure to provide warnings or instructions.

**c.**    Does not include vending machines or other property rented to or located for the use of others but not sold.

**"Your work":**

**a.**    Means:

   **(1)**    Work or operations performed by you or on your behalf; and

   **(2)**    Materials, parts or equipment furnished in connection with such work or operations.

**b.**    Includes:

   **(1)**    Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and

   **(2)**    The providing of or failure to provide warnings or instructions.

12.     Among other Policy terms, the Policy specifies that the insurance applies to "bodily injury" and "property damage" only if the "bodily injury" or "property damage" is caused by an "occurrence" that occurs during the policy period, and prior to the policy period, no insured listed under Paragraph 1. of Section II - Who Is An Insured, and no "employee" authorized by the named insured to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

13.     The Policy further provides, among other things, that "bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph 1. of Section II - Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim: (1) reports all, or any part, of the "bodily injury" or "property damage" to Mid-Continent or any other insurer; (2) receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or (3) becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

14.     In addition, the foregoing terms are subject to certain exclusionary policy terms, which provide that the insurance does not apply to, among other things, the following:

**a.     Expected or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured.

This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

**b.     Contractual Liability**

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

**(1)**     That the insured would have in the absence of the contract or agreement; or

**(2)**     Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorneys' fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:

**(a)**     Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "inured contract"; and

**(b)**     Such attorneys' fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

**f.     Pollution**

**(2)**     Any loss, cost or expense arising out of any:

**(a)**     Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

**(b)** Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

However, this paragraph does not apply to liability for damages because of "property damage" that the insured would have in the absence of such request, demand, order or statutory or regulatory requirement, or such claim or "suit" by or on behalf of a governmental authority.

**j.    Damage to Property**

"Property Damage" to:

(5)    That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations . . . ; or

(6)    That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it. This exclusion does not apply to . . . "property damage" included in the "products-completed operations hazard".

**m.    Damage to Impaired Property or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

**(1)**    A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

**(2)**    A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

15.     The Policy further incorporates exclusionary endorsement ML 12 17 02 10, the Fungus, Mildew and Mold Exclusion, which modifies the Policy such that the insurance does not apply to

**1.**     "Bodily injury", "property damage", "personal and advertising injury" or "medical payments" arising out of, resulting from, caused by, contributed to, attributed to, or in any way related to any fungus, mildew, mold or resulting allergens;

**2.**     Any costs or expenses associated, in any way, with the abatement, mitigation, remediation, containment, detoxification, neutralization, monitoring, removal, disposal or any obligation to investigate or assess the presence or effects of any fungus, mildew, mold or resulting allergens; or

**3.**     Any obligation to share with or repay any person, organization or entity, related in any way to items **1** and **2.**

The Policy additionally excludes medical payments with respect to any premises or classification shown in the Schedule in the Policy.

15.     The Policy incorporates Endorsement ML 13 33 03 15, which excludes:

**l.     "Defective Work"**

"Defective Work" includes any and all costs associated with the removal or replacement of the defective, deficient or faulty work.

16.     Under Texas' complaint allegation/eight-corners rule for determining the duty to defend, an insurer is required to defend only those cases within a policy's coverage. *Fidelity & Guar. Ins. Underwriters, Inc. v. McManus*, 633 S.W.2d 787, 788 (Tex. 1982). An insurer has no legal obligation to defend a suit if the underlying petition does not allege facts that fit within the scope of coverage. *See Pine Oak Builders, Inc. v. Great Am. Lloyds Ins. Co*., 279 S.W.3d 650, 655 (Tex. 2009). An insurer also has no duty

to defend when the complaint makes allegations that, if proven, would place the claim within an exclusion from coverage. *Nat'l Union Fire Ins. Co. v. Merchants Fast Motor Lines, Inc*., 939 S.W.2d 139, 141-142 (Tex. 1997). In determining the duty to defend, courts "must focus their review on the pleading's factual allegations, not on the legal theories asserted." *Id*. The court may not read facts into the pleadings, look outside the pleadings, or imagine factual scenarios that might trigger coverage. *Id*.

17.     The allegations in the *Gazda* lawsuit either fall outside the scope of the insuring agreement, *e.g*., they seek rescission or restoration, and not damages, or they fall within the scope of one or more of the exclusions cited herein. Without limitation, Gazda's allegations of damages arising from Dabney's knowing non-disclosure of the murder/suicide in the subject house do not constitute an "occurrence," do not constitute "damages because of 'bodily injury' or 'property damage,'" and do not constitute "bodily injury" or "property damage." They do not give rise to coverage. Further, and without limitation, Gazda's other claims for knowing or reckless misrepresentation and non-disclosure do not allege an "occurrence" as necessary, though not sufficient, for coverage potentially to apply.

18.     In addition, or in the alternative, the allegations fall within the scope of the "Expected or Intended Injury" exclusion. In addition, or in the alternative, Gazda's claims arising out of the contract for Gazda's purchase of the Property are excluded by the "Contractual Liability" exclusion. *See Gilbert Texas Construction, LP v. Underwriters at Lloyd's London*, 327 S.W.3d 118, 127 (Tex. 2010). In addition, or in the alternative, claims arising out of the Property, including the purchase of the Property,

based on defects or deficiencies in it, are within the exclusion for "Impaired Property." In addition, or in the alternative, Gazda's claims for damages based on exposure to or the presence of mold, mildew, or fungus, whether for "bodily injury," "property damage," or "medical expenses," are excluded by the Fungus, Mildew and Mold Exclusion and/or by the Pollution exclusion. Further, Gazda purchased a completed house from Dabney, and her claims for damages to the Property, or economic damages arising out of the Property, due to defective completed work, are foreclosed by the "Defective Work" exclusion. Gazda's claims within the "products-completed operations hazard" are barred; any other claims would be within exclusions j(5) and j(6). *See Mid-Continent Cas. Co. v. JHP Dev., Inc.*, 557 F.3d 207, 213 (5th Cir. 2009). Based on these Policy terms and exclusions, there is no potentially covered claim, and Mid-Continent owes no duty to defend.

18.     Moreover, because even proof of the allegations in the *Gazda* lawsuit would not give rise to a covered claim, Mid-Continent could not have any duty to indemnify. *See Farmers Tex. County Mut. Ins. Co. v. Griffin*, 955 S.W.2d 81, 84 (Tex. 1997) (observing that "[i]n many cases . . . the court may appropriately decide the rights of the parties before judgment is rendered in the underlying tort suit," and encouraging insurers to "make a good faith effort to ***fully resolve*** coverage before a judgment has been rendered in the underlying claim" [emphasis added]"); *see also State Farm Fire & Cas. Co. v. Gandy*, 925 S.W.2d 696, 714 (Tex. 1996)(recognizing adjudication of coverage and duty to defend before plaintiff's claim is adjudicated)*; Nat'l Union Fire Ins. Co. v. Puget Plastics Corp*, 532 F.3d 398, 404 (5th Cir. Tex. 2008) (courts are not precluded from making factual findings in coverage actions). Consequently, based on the First

Amended Petition, Mid-Continent is entitled to declaratory judgment that it owes neither a duty to defend nor a duty to indemnify Dabney in the *Gazda* lawsuit.

19.     Without limiting the foregoing, Mid-Continent asserts all terms and conditions of the Policy, including, without limitation, the policy limits and policy deductible. A true and correct copy of the policy is filed with this Complaint as Attachment 2 and is incorporated herein by reference as if set forth verbatim.

## PRAYER

Wherefore, premises considered, Mid-Continent respectfully requests that the Court declare and enter judgment that:

a.      Mid-Continent owes no duty to defend Dabney Homes, LLC, in the *Gazda* lawsuit under the terms of Policy Number 04-GL-005000848;

b.      Mid-Continent owes no duty to indemnify Dabney Homes, LLC, under the terms of Policy Number 04-GL-005000848;

c.      Mid-Continent recover costs of court, its reasonable and necessary attorneys' fees, and all other and further relief to which it may be entitled at law or in equity.

Respectfully submitted,

CHAMBERLAIN ♦ McHANEY
301 Congress Avenue, 21st Floor
Austin, Texas   78701
(512) 474-9124
(512) 474-8582 facsimile



By:     /s/ David E. Chamberlain
        DAVID E. CHAMBERLAIN
        Texas Bar No. 04059800

**ATTORNEYS FOR PLAINTIFF**

FILED
6/5/2019 3:43 PM
Mary Angie Garcia
Bexar County District Clerk
Accepted By: Brenda Carrillo

citpps/sac2

CAUSE NO. 2019CI07016

| | | |
|---|---|---|
| SUZANNE GAZDA, M.D., | § | IN THE DISTRICT COURT |
| | § | |
| V. | § | 408th JUDICIAL DISTRICT |
| | § | |
| DABNEY HOMES, LLC | § | BEXAR COUNTY, TEXAS |

## PLAINTIFF'S FIRST AMENDED PETITION

TO THE HONORABLE JUDGE:

NOW COMES Plaintiff, SUZANNE GAZDA, M.D., and files this Original Petition complaining of Defendant, DABNEY HOMES, LLC, and would show the Court as follows:

## I.
## DISCOVERY

1.      Discovery in this matter should be conducted under Level II.

## II.
## CLAIM FOR RELIEF

2.      Plaintiff seeks monetary relief of over $1,000,000. Plaintiff also makes a demand for judgment for all the other relief to which the party deems herself entitled.

## III.
## PARTIES

3.      Plaintiff, SUZANNE GAZDA, M.D., is a Texas resident.

4.      Defendant, DABNEY HOMES, LLC, is a Texas Limited Liability Company who has failed to maintain its Registered Agent's address and, therefore, may be served by serving its President and Registered Agent, Jack H. Dabney, at 302 Wildrose, San Antonio, Texas 78209 or at 5007 McCullough Ave., San Antonio, TX 78212, or wherever he may be found. **Service will be by private process.**

**ATTACHMENT 1**

## IV.
## JURISDICTION AND VENUE

5.      The amount in controversy is within the jurisdictional limits of this Court.  Venue is proper in Bexar County pursuant to Texas Civil Practice & Remedies Code Ann. §15.001(a)(1) in that all, or a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in Bexar County, Texas.

## V.
## CONDITIONS PRECEDENT

6.      All conditions precedent to Plaintiff's recovery have been satisfied, performed, or rendered moot by the passage of time.

## VI.
## FACTUAL BACKGROUND

7.      Dr. Gazda purchased the property located at 333 Rosemary, San Antonio, Texas 78209 ("the Property") for $1,550,000.00 from Jack H. Dabney with Dabney Homes, LLC, in February 2018.

8.      At the time of purchase, DABNEY HOMES LLC presented Dr. Gazda with a Seller's Disclosure Notice where a number of affirmative representations were made, including, but not limited to that there were no defects or malfunctions in the drainage, that there were no defects or malfunctions in the structural components, and that he was not aware of any condition on the property which would materially affect the health or safety of an individual. DABNEY HOMES, LLC also affirmed that he was not aware of "any death on the Property except those deaths caused by: natural causes, suicide or accident unrelated to the condition of the property".

9.      Shortly after moving into the home, Dr. Gazda and her daughter began dealing with a series of fungal-related illnesses. Due to these illnesses, Dr. Gazda can no longer enter her own home, or even the garage, because of her reactions to the indoor air contamination. These

2

Copy from re:SearchTX

**ATTACHMENT 1**

conditions have required Dr. Gazda and her daughter to vacate the premises, and since doing so, the health of both is much improved.

10. To determine the cause of the conditions existing at the Property, Dr. Gazda retained Certified Industrial Hygienists and Professional Engineers to test and evaluate the residence. Evaluation and testing of the residence confirms that the home in fact suffers from elevated levels of mold. Testing showed elevated levels of *Penicillium/Aspergillus*-type spores in the master suite likely due to mold contamination within parts of the west wall of the master suite. In addition, dust from the master suite was found to contain a wide variety of mold material; specific mold species found, that are of particular concern, include *Aspergillus flavus, A. fumigatus, A. niger, A. penicillioides, A. restrictus, A. sydowii, A. terreus, A. versicolor, Aureobasidium pullulans, Cladosporium sphaerospermum, P. crustosum, P. variabile,* and *Wallemia sebi.*

11. Water damage was also found during the inspections and testing. *First,* the west side drainage channel is up to about 14 inches above finished floor level in the master suite, and excess moisture has been documented at the west wall of the master closet. The wall cavities apparently have a concrete curb, but it does not appear to be high enough, and moisture is getting to the wood base trim and lower sheetrock wall finish. Exterior siding is below grade and subject to deterioration.

12. *Second*, the crawl space is a huge reservoir of *Penicillium/Aspergillus*-type spores and *Chaetomium* spores, which generally cause health effects for building occupants. The Crawl Space has extreme mold odors, and a large quantity of rotten structural wood members was left in place in the lower crawl space. Water was found to be entering and ponding in the lower crawl space. Interestingly, this is the location where Mr. Dabney had dug a 5' trench and placed a small heater in the crawl space prior to the time of Dr. Gazda's inspection. The crawl space appears to be contaminating the entire north area of the house, and the north area can

3

Copy from re:SearchTX

**ATTACHMENT 1**

contaminate the south area because of the location of return air components of the air-conditioning systems.

13.    The swimming pool was also evaluated to determine if it was a source of water in the crawl space.  The swimming pool itself has been ruled out as a source, except that the pool overflow pipe drains into the landscape area adjacent to the downstairs area (mud room, et. al). It was determined that excess roof and pool deck runoff may contribute to the water accumulation in this area, but excavation has not yet occurred to determine this condition.

14.    It has also been determined that groundwater and surface water flow down the relatively steep slope from Broadway to New Braunfels, contributing to the moisture conditions. There is no outlet for water accumulating in the lower crawl space; it appears that in the original construction water may have been able to flow out toward the asphalt driveway and into the neighbor's yard or to the street. The new driveway and flat work outside the mud room, constructed under Dabney's ownership, are at elevations that precludes that route, and the lower crawl space edges have been filled with soil.

15.    *Third,* the wood flooring/slab system in the south area is moist or wet.  Either the slab never dried, or there may be impacts from groundwater and/or stormwater runoff.

16.    *Fourth,* the return air for the air handling unit (AHU) in the south area appears to be inducing air from north area (remodeled construction).  Both main return air filters have culturable *Aspergillus,* but the level of that mold is higher at the north area than the south area. Proving the point is that the indoor air in the master suite has elevated levels of *Penicillium/Aspergillus*-type spores and no *Curvularia*. Curvularia was prevalent in outdoor air in the front yard, so the *Penicillium/Aspergillus*-type spores present in indoor air may not have been contributed by the outdoor air.

17.    *Fifth,* the north area has persistent mold odor, starting with the garage and continuing into the downstairs area and the living area on the main floor of the north area.

4

Copy from re:SearchTX

**ATTACHMENT 1**

Samples of dust in the north area have shown a wide distribution of mold species, including many that are associated with water-damaged buildings and with health effects for occupants. Specific mold species found, that are of particular concern, include *A. fumigatus, A. niger, A. penicillioides, A. restrictus, A. sydowii, A. versicolor, Aureobasidium pullulans, Chaetomium globosum, Cladosporium sphaerospermum, Eurotium amstelodami, Fusarium sp., Paecilomyces variotii, Penicillium brevicompactum, P. corylophilum, P. variabile, P. crustosum, Stachybotrys chartarum, Trichoderma viride,* and *Wallemia sebi*. Mold spores are elevated and are likely derived from the extremely high levels in the crawl space. There are chases that connect the crawl space to the living area and/or the attic above; these could easily allow mold material from the crawl space into areas of the north area. The north area in turn can contaminate the south area. There may also be hidden sources of mold affecting the north area and the downstairs area, but destructive testing of the wall cavities is necessary.

18. *Sixth,* the subfloor for the north area and downstairs area living spaces has apparently been in place for many years; it is likely that the wood subfloors have been impacted by a history of wet environments, but the foam insulation that was placed recently prevents observation or testing of the subfloors so destructive testing for moisture content and mold contamination is still necessary.

19. Because of the elevated levels of mold and the water and mold damage, the home will require remediation which could include the following:

   a. Reconstruction of the crawl space to eliminate buried siding and skirts that are not designed for ground contact and potential water contact;

   b. Provision for drainage and ventilation of the lower crawl space;

   c. Reconstruction of the west drainage channel;

   d. Removal of foam insulation and remediation of subflooring surfaces exposed in the crawl spaces for the north area and downstairs area;

   e. Removal of rotten wood in the lower crawl space;

5

Copy from re:SearchTX

**ATTACHMENT 1**

f.   Construction of a sealed entry with decontamination chamber to the crawl space;

g.   Evaluation of water resistance and potential repair of the south wall of the downstairs area;

h.   Containment of chases to prevent crawl space air from traveling up these spaces into living areas and the attic spaces above;

i.   Remediation of wall cavities in the north area;

j.   Reconstruction of the west walls of the master suite to eliminate moisture intrusion and to eliminate wall finish and trim materials that are apparently in contact with the unsealed concrete curb;

k.   Removal of wood flooring and drying of the concrete slab;

l.   Redesign of air distribution for the two air-conditioning systems;

m.   Redesign of drainage from the pool and pool deck; this may require redesign of the roof drainage.

20.     It cannot be said that a builder of DABNEY HOMES, LLC'S caliber did not identify these issues prior to selling the property to Dr. Gazda. It is believed that DABNEY HOMES, LLC was aware of deficient drainage and construction techniques which cause or contribute to the problems being experienced by Dr. Gazda.

21.     Moreover, based on information and belief, it is believed that Dabney Homes LLC had knowledge of a murder that occurred in the house in 1999 when Frank Wolf murdered his wife and then committed suicide, but failed to disclose it on the Seller's Disclosure Notice. Interestingly, following the Wolfs' death, the property did not go on the market, but instead was purchased by Jon Thomas Ford, Jon Grant Ford and Nancy Archer Ford, as shown in the deed records, $129,600.   Apparently their son Tom resided in the home until he murdered his girlfriend just a few miles away, at which time Jon Ford transferred his interest to his brother Christopher Bradley Ford.   Then, Mr. Dabney purchased the property in 2016 for $1,060,000, despite the Alamo Heights permit records showing less than $10,000 in permitted upgrades to

6

Copy from re:SearchTX

**ATTACHMENT 1**

the property. It is apparent that DABNEY HOMES LLC intentionally failed to disclose a known condition in violation of the Texas Property Code.

22. Based on the foregoing, Dr. Gazda brings this suit for the causes of action articulated below.

## VII.
## FIRST CAUSE OF ACTION:
## BREACH OF CONTRACT

23. Plaintiff re-alleges and incorporates by reference all facts set forth in the foregoing paragraphs. In accordance with the previous allegations DABNEY HOMES, LLC breached their contractual obligations to Dr. Gazda by failing to fully, adequately and honestly disclose the true condition of the Property. DABNEY HOMES, LLC owed Dr. Gazda a duty to fully disclose the condition of the house and associated warranties and this breach has caused Plaintiff's damages set out herein.

## VIII.
## SECOND CAUSE OF ACTION:
## COMMON LAW AND STATUTORY FRAUD AND FRAUD IN A REAL ESTATE
## TRANSACTION

24. Incorporating all of the foregoing paragraphs, DABNEY HOMES, LLC, made guarantees and representations regarding the Property. Defendant made representations to Dr. Gazda and knowingly concealed pertinent information regarding previous deaths on the Property.

25. Defendant made representations of material fact to Dr. Gazda. These representations were false and Defendants knew the representations were false or made them recklessly, without knowledge of truth or falsity. These representations were made with the intent that Dr. Gazda act on them, particularly that she purchase the house made the basis of this suit. Dr. Gazda relied upon these representations and that reliance caused her injuries.

Copy from re:SearchTX

**ATTACHMENT 1**

26.     Furthermore, Defendants fraudulently induced Dr. Gazda into executing the contract for purchase of the residence. DABNEY HOMES, LLC committed fraud on Dr. Gazda by nondisclosure. DABNEY HOMES, LLC had a duty to disclose such facts, which were material to the transaction and to Dr. Gazda.  DABNEY HOMES, LLC knew that Dr. Gazda was ignorant of the facts and she did not have an equal opportunity to discover the facts.  Instead of providing Dr. Gazda with the truth, she was provided with false information. By failing to disclose the true facts, it is clear that they intended to induce Dr. Gazda into purchasing the residence. Dr. Gazda relied upon their nondisclosure and affirmative false representations that resulted in her damages.

27.     Moreover, the transaction and contract between DABNEY HOMES, LLC and Dr. Gazda involved real estate. During the transaction, DABNEY HOMES, LLC, made representations regarding the quality, condition, and characteristics of the residence and the property. Dabney Homes, LLC was aware of the false representations but failed to disclose to Dr. Gazda that the representations were false. DABNEY HOMES, LLC made the false representation in an attempt to induce Dr. Gazda into purchasing the residence. DABNEY HOMES, LLC, in fact, benefited from the false representations and knew Dr. Gazda would rely on such misrepresentations. Dr. Gazda relied on DABNEY HOMES, LLC'S false representations, thereby causing her injury.

28.     The Defendant also made false representations regarding past or existing material facts insofar as the Defendant misrepresented the character, quality, and condition of the property and the history of the residence. These false representations were made for the purpose of inducing Dr. Gazda into purchasing the home. The false representations were relied upon by Dr. Gazda and, as a result, she has suffered injury.

29.     The actions and omissions of the Defendant constitute common law fraud, fraudulent inducement, fraud by nondisclosure and fraud in a real estate transaction in violation of Texas Business & Commerce Code §27.01, which were a proximate cause of damages suffered by SUZANNE GAZDA, M.D..

8

Copy from re:SearchTX

**ATTACHMENT 1**

## IX.
## THIRD CAUSE OF ACTION: NEGLIGENCE

30.     Incorporating all of the foregoing paragraphs, DABNEY HOMES, LLC'S actions surrounding the sale of the Property and the representations made concerning the condition of the home was negligent.  Specifically, DABNEY HOMES, LLC had a duty to exercise ordinary care and disclose the true condition of the residence and the history in a reasonable and prudent manner.  DABNEY HOMES, LLC breached that duty, as alleged in the foregoing paragraphs.

34.     As a result of Defendant's negligence, Dr. Gazda has suffered financial damage.

## X.
## FOURTH CAUSE OF ACTION - PART A:
## DECEPTIVE TRADE PRACTICES - CONSUMER PROTECTION ACT

35.     Suzanne Gazda, M.D. is a consumer as defined by the Deceptive Trade Practices Act.  Defendant committed false, misleading, or deceptive acts or practices with regard to the sale of the house at issue and misrepresented the quality of the house. Defendant did not inform Dr. Gazda that the house contained multiple defects and were concealed. The Defendant has violated Texas Business and Commerce Code §§17.46 (a), 17.416 (b), (2), (5), (7), (12), (20), (22), and (24), and any other portion of the act that apply based on the facts of this case. Additionally, the Defendant's conduct was unconscionable in that it took advantage of Dr. Gazda's lack of knowledge of the condition of the house to a grossly unfair degree. Defendant's actions were a producing cause of Dr. Gazda's damages in that had Defendant been honest and forthcoming about the true condition of the house, Dr. Gazda would not have purchased the house or would have adjusted the price to reflect the true condition of the house.

## XI.

36.     Plaintiff is a consumer as she purchased the residence from Defendant, and therefore, she has a cause of action against Defendant, under the provisions of the Deceptive Trade Practices - Consumer Protection Act pursuant to §17.50(a) which provides as follows:

9

Copy from re:SearchTX

**ATTACHMENT 1**

"A consumer may maintain an action where any of the following constitute a producing cause of actual damages:

1.     The use or employment by any person of a false, misleading or deceptive act or practice that is specifically enumerated in a subdivision of Subsection (b) of Section 17.46 of this Subchapter;

2.     Any unconscionable action or course of action by any person by unreasonable delay in payment, unreasonable denial of coverage, misrepresentation of facts; or

3.     The breach of an express or implied warranty.

37.     Due to Dr. Gazda's consumer status is established in terms of her relationship to the transaction, she has causes of action against Defendant under the DECEPTIVE TRADE PRACTICES-CONSUMER PROTECTION ACT.

**XII.**
**FOURTH CAUSE OF ACTION - PART B:**
**DECEPTIVE TRADE PRACTICES - CONSUMER PROTECTION ACT §17.46(B)**

38.     Defendant has violated various provisions of TEX. BUS. & COMM. CODE §17.46(b) including, but not limited to the following:

- In causing confusion or misunderstanding as to the source, sponsorship, approval or certification of the residence and/or the property; TEX. BUS. & COMM. CODE §17.46(b)(2).

- In representing that the residence and/or the property has sponsorship, approval, characteristics, uses, and benefits, which they do not have; TEX. BUS. & COMM. CODE §17.46(b)(5).

- In representing that the residence and/or the property are of a particular standard, quality, or grade, if they are of another; TEX. BUS. & COMM. CODE §17.46(b)(7).

- In representing that an agreement confers or involves rights, remedies, or obligations which it does not have or involve, or which are prohibited by law; TEX. BUS. & COMM. CODE §17.46(b)(12).

- In representing that a guaranty or warranty confers or involves rights or remedies which it does not have or involve; TEX. BUS. & COMM. CODE §17.46(b)(20).

- In representing that work or services have been performed on the residence when the work or services were not performed. TEX. BUS. & COMM. CODE §17.46(b)(22).

Copy from re:SearchTX

**ATTACHMENT 1**

- In failing to disclose information concerning the residence and/or the warranty which was known at the time of the transaction if such failure to disclose such information was intended to induce Plaintiff into a transaction into which she would not have entered had the information been disclosed. TEX. BUS. & COMM. CODE §17.46(b)(24).

## XIII.

39.     The above violations of Texas Business and Commerce Code §17.46(b) were a producing cause of Plaintiff's damages as hereinafter set forth and were committed knowingly.

## XIV.
## FOURTH CAUSE OF ACTION – PART C
## DECEPTIVE TRADE PRACTICES - CONSUMER PROTECTION ACT §17.50(A)(3)

40.     Defendant, by virtue of its conduct as described above, engaged in an unconscionable action or course of action as that term is defined by the Deceptive Trade Practices - Consumer Protection Act.  Dr. Gazda is entitled to the relief set out in the Act.

## XV.

41.     The above violations of Texas Business and Commerce Code §17.46(b) were a producing cause of Dr. Gazda's damages as hereinafter set forth and were committed knowingly.

## XVI.
## RESCISSION

42.     Plaintiff will suffer substantial harm if the contract is not rescinded and her consideration returned, since the residence she has received under the contract is useless for the purposes for which Plaintiff purchased it.  Damages would not adequately compensate for the loss of her bargain.  Plaintiff has acted with reasonable diligence after discovery of the fraud to mitigate her damages and to seek the remedy of rescission.  Plaintiff requests that the Court return Plaintiff to the position held before the contract.  In addition to rescission, Plaintiff seeks damages as necessary to accomplish full justice.

11

Copy from re:SearchTX

**ATTACHMENT 1**

## XVII.
## DAMAGES

43.    Dr. Gazda has been made to suffer great injury by the Defendant concealing the true condition of the house.  Dr. Gazda seeks the recovery of all economic damages. These include but are not limited to 1) out-of-pocket damages; 2) benefit-of-the-bargain damages measured by the value of the house as represented by Defendant, versus the value of the house actually received, 3) costs of mitigation, 4) cost of repair and remediation, 5) additional living expenses; and/or 6) diminished value. Given that the Defendant made the representations knowingly and intentionally, Dr. Gazda is entitled to to three times of her economic damages.

44.    Alternatively, Dr. Gazda seeks the equitable remedy of restoring the money that Defendant received in violation of the Deceptive Trade Practices Act given that Dr. Gazda relied upon the representations made by Defendant regarding the quality of the house.

## XVIII.
## PRODUCING & PROXIMATE CAUSE

45.    Defendant's conduct as described above was a producing and/or proximate cause of Dr. Gazda's actual damages.  As a result, Dr. Gazda has sustained actual damages well in excess of the minimum jurisdictional limits of this Court.

## XIX.
## ATTORNEY'S FEES

46.    Defendant's conduct as described in this Petition and the resulting damage and loss of Dr. Gazda has necessitated Dr. Gazda retaining the attorney whose name is subscribed to this Petition.  Dr. Gazda seeks to recover attorney's fees under Civil Practices and Remedies Code 38.001(8) for Defendant's breach of a written contract and under the Texas Deceptive Trade Practices Act.  Dr. Gazda seeks recovery from Defendant to compensate Dr. Gazda for attorney's services in the preparation and prosecution of this action as well as for each appeal to any other court.

12

Copy from re:SearchTX

**ATTACHMENT 1**

# XX.
## PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiff prays that Defendant be cited to appear and answer and on final trial that Plaintiff be awarded all actual damages, economic damages, consequential damages, special damages, attorney's fees, pre-judgment interest, post-judgment interest, taxable court costs, all in an amount that exceeds the jurisdictional limits of this Court and for such other and further relief to which Plaintiff may show herself justly entitled.

Respectfully submitted,

KUSTOFF & PHIPPS, L.L.P.
4103 Parkdale Street
San Antonio, Texas 78229
Telephone: (210) 614-9444
Telecopier: (210) 614-9464

By: */s/ Melanie Phipps Sanders*
      DANIEL O. KUSTOFF
      State Bar No. 11770515
      dkustoffservice@kplegal.com
      MELANIE PHIPPS SANDERS
      State Bar No. 24032416
      msanders@kplegal.com
      TAYLOR L. CRULL
      State Bar No. 24107021
      tcrull@kplegal.com

Copy from re:SearchTX

**ATTACHMENT 1**



# MID-CONTINENT CASUALTY COMPANY

**1437 S. BOULDER P. O. BOX 1409 TULSA OK 74119**

## COMMERCIAL GENERAL LIABILITY POLICY DECLARATION

| Policy No. | 04-GL-005000848 |
|---|---|

| Named Insured and Mailing Address | Agent Name and Mailing Address | |
|---|---|---|
| DABNEY HOMES LLC<br>302 WILDROSE AVE<br>SAN ANTONIO TX 78209 | HOME BUILDERS INSURANCE<br>SERVICES, L.P. - HOMEBUILDERS<br>206 YMCA DRIVE STE 101A<br>WAXAHACHIE TX 75165 | 42-1206 |

POLICY PERIOD: FROM **04/27/2017** TO **04/27/2018** at 12:01 A.M. Standard Time at your mailing address shown above

THE NAMED INSURED IS: **LLC**

BUSINESS DESCRIPTION: **HOMEBUILDERS**

IN RETURN FOR THE PAYMENT OF THE PREMIUM, AND SUBJECT TO ALL THE TERMS OF THIS POLICY, WE AGREE WITH YOU TO PROVIDE THE INSURANCE AS STATED IN THIS POLICY.

THIS POLICY CONSISTS OF THE FOLLOWING COVERAGE PARTS FOR WHICH A PREMIUM IS INDICATED. THIS PREMIUM MAY BE SUBJECT TO ADJUSTMENT.

| | PREMIUM |
|---|---|
| COMMERCIAL GENERAL LIABILITY COVERAGE PART | $ 6,413.00 |
| OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART | $ |
| PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART | $ |
| RAILROAD PROTECTIVE LIABILITY COVERAGE PART | $ |
| SURCHARGE / TAXES (if applicable) | $ |
| TOTAL | $ 6,413.00 |

REPORTING BASIS: ANNUAL

Form(s) and Endorsement(s) made a part of this policy at this time*:

| | | | | | |
|---|---|---|---|---|---|
| CG0300(01/96) | ML1439(11/04) | ML1344(11/04) | ML1288(07/05) | ML1189(06/02 | ML1188(06/02) |
| MI9101(01/16) | MI9098(01/16) | MI9059(04/04) | MI9046(06/10) | MI9014(06/15) | MI9002(06/00) |
| IL0275(11/13) | IL0168(03/12) | IL0021(09/08) | IL0017(11/98) | CG2639(12/07 | CG2426(04/13) |
| CG2196(03/05) | CG2107(05/14) | CG0103(06/06) | CG0001(04/13) | ML1388(05/13 | ML1217(02/10) |
| ML1125(06/02) | ML1001(11/04) | ML1333(03/15) | CG2135(10/01) | ML1191(04/00) | |

*Omits applicable Forms and Endorsements if shown in specific Coverage Part/Coverage Form Declarations.

Countersigned at: **WAXAHACHIE TX**

Date: **04/26/2017** By: _____

Authorized Representative

**ATTACHMENT 2**

# COMMERCIAL GENERAL LIABLITY COVERAGE PART
## DECLARATION

**Policy No. 04-GL-005000848**

**Effective Date: 04/27/2017**
**12:01 A.M. Standard Time**

## LIMITS OF INSURANCE

| | | |
|---|---|---|
| General Aggregate Limit (Other Than Products - Completed Operations) | $ | 2,000,000 |
| Products-Completed Operations Aggregate Limit | $ | 2,000,000 |
| Personal and Advertising Injury Limit | $ | 1,000,000 |
| Each Occurrence Limit | $ | 1,000,000 |
| Damage to Premises Rented To You | $ | 100,000 Any One Premises |
| Medical Expense Limit | $ | EXCLUDED Any One Person |

## BUSINESS DESCRIPTION AND LOCATION OF PREMISES

Form of Business:    **LLC**

Business Description*:    **HOMEBUILDERS**

Location of All Premises You Own, Rent or Occupy:

## PREMIUM

| Location / Classification | Code No | Premium Basis A)Area P)Payroll S)Gross Sales M)Admissions C)Cost U)Per Unit T)See Desc | | Rate Pr/Co | All Other | Advance Premium Pr/Co | All Other |
|---|---|---|---|---|---|---|---|
| **TEXAS** | | | | | | | |
| **Homebuilders Program - General Contractor - Premises/Operations** | **900500** | P) | **60,000** | | **43.020** | | **2,581.** |
| **Homebuilders Program - General Contractor - Products/Completed Operations** | **900501** | S) | **2,000,000** | **1.176** | | **2,352.** | |
| **Enhanced Coverage for Contractors Endorsement - See Form Attached (Premium Basis: % of Premium)** | **900594** | T) | | | **.300** | | **1,480.** |
| Minimum Premiums | | | | | | | |
| All Other | | | | | | | |
| MCG Program | | | | | | | |
| Pr/Co | | | | | | | |
| Policywriting    **$500** | | | Total Advance Premium | | | **$ 2,352.** | **$ 4,061.** |

## FORMS AND ENDORSEMENTS (other than applicable Forms and Endorsements shown elsewhere in the policy)

Forms and Endorsements applying to the Coverage Part and made part of this policy at time of issue:

*Information omitted if shown elsewhere in the policy.                    **Inclusion of date optional.
These declarations are part of the policy declarations containing the name of the insured and the policy period.

**ATTACHMENT 2**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# DEDUCTIBLE LIABILITY INSURANCE

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

**SCHEDULE**

| Coverage | Amount and Basis of Deductible | |
|---|---|---|
| | **PER CLAIM     or** | **PER OCCURRENCE** |
| Bodily Injury Liability | $ | $ |
| OR | | |
| Property Damage Liability | $ | $ |
| OR | | |
| Bodily Injury Liability and/or Property Damage Liability Combined | $     2500 | $ |

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

**APPLICATION OF ENDORSEMENT** (Enter below any limitations on the application of this endorsement. If no limitation is entered, the deductibles apply to damages for all "bodily injury" and "property damage", however caused):

**A.** Our obligation under the Bodily Injury Liability and Property Damage Liability Coverages to pay damages on your behalf applies only to the amount of damages in excess of any deductible amounts stated in the Schedule above as applicable to such coverages.

**B.** You may select a deductible amount on either a per claim or a per "occurrence" basis. Your selected deductible applies to the coverage option and to the basis of the deductible indicated by the placement of the deductible amount in the Schedule above. The deductible amount stated in the Schedule above applies as follows:

  **1. PER CLAIM BASIS.** If the deductible amount indicated in the Schedule above is on a per claim basis, that deductible applies as follows:

   **a.** Under Bodily Injury Liability Coverage, to all damages sustained by any one person because of "bodily injury";

   **b.** Under Property Damage Liability Coverage, to all damages sustained by any one person because of "property damage"; or

   **c.** Under Bodily Injury Liability and/or Property Damage Liability Coverage Combined, to all damages sustained by any one person because of:

     **(1)** "Bodily injury";

     **(2)** "Property damage"; or

     **(3)** "Bodily injury" and "property damage" combined

  as the result of any one "occurrence".

  If damages are claimed for care, loss of services or death resulting at any time from "bodily injury", a separate deductible amount will be applied to each person making a claim for such damages.

  With respect to "property damage", person includes an organization.

**ATTACHMENT 2**

2. **PER OCCURRENCE BASIS.** If the deductible amount indicated in the Schedule above is on a "per occurrence" basis, that deductible amount applies as follows:

   **a.** Under Bodily Injury Liability Coverage, to all damages because of "bodily injury";

   **b.** Under Property Damage Liability Coverage, to all damages because of "property damage"; or

   **c.** Under Bodily Injury Liability and/or Property Damage Liability Coverage Combined, to all damages because of:

     **(1)** "Bodily injury";

     **(2)** "Property damage"; or

     **(3)** "Bodily injury" and "property damage" combined

as the result of any one "occurrence", regardless of the number of persons or organizations who sustain damages because of that "occurrence".

**C.** The terms of this insurance, including those with respect to:

   **1.** Our right and duty to defend the insured against any "suits" seeking those damages; and

   **2.** Your duties in the event of an "occurrence", claim, or "suit"

apply irrespective of the application of the deductible amount.

**D.** We may pay any part or all of the deductible amount to effect settlement of any claim or "suit" and, upon notification of the action taken, you shall promptly reimburse us for such part of the deductible amount as has been paid by us.

Copyright, Insurance Services Office, Inc., 1994

CG 03 00 01 96   ◻

**ATTACHMENT 2**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EXCLUSION – COVERAGE C – MEDICAL PAYMENTS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SCHEDULE**

**Description And Location of Premises Or Classification:**

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

With respect to any premises or classification shown in the Schedule:

**1.** Section **I** – Coverage **C** – Medical Payments does not apply and none of the references to it in the Coverage Part apply: and

**2.** The following is added to Section **I** – Supplementary Payments:

**h.** Expenses incurred by the insured for first aid administered to others at the time of an accident for "bodily injury" to which this insurance applies.

**ATTACHMENT 2**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EXTERIOR INSULATION AND FINISH SYSTEM ENDORSEMENT

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

Unless so indicated below, the "Exterior Insulation and Finish System Hazard" is included within the Limit of Insurance.

☐  **A.**  If so indicated, the "Exterior Insulation and Finish System Hazard" is limited to:

$ _____ Aggregate

$ _____ Deductible Per Claim

☒  **B.**  If so indicated, this insurance does not apply to "Property Damage" arising out of the "Exterior Insulation and Finish System Hazard".

<u>Definition</u>

**1.**  "Exterior Insulation and Finish System Hazard" means the design, manufacture, construction, fabrication, preparation, installation, application, maintenance or repair, including remodeling service, correction, or replacement, of an "exterior insulation and finish system" (commonly referred to as synthetic stucco) or any part thereof, or any substantially similar system or any part thereof, including the application or use of conditioners, primers, accessories, flashings, coatings, caulkings or sealants in connection with such a system when performed by you or on your behalf; or

Any work or operations with respect to any exterior component, fixture or feature of any structure if an "exterior insulation and finish system" is used on any part of that structure when performed by you or on your behalf.

**2.**  "Exterior Insulation and Finish System" means:
   **a.**  A rigid or semi-rigid insulation board made of expanded polystyrene or other materials;
   **b.**  The adhesive and/or mechanical fasteners used to attach the insulation board to the substrate;
   **c.**  A reinforced base coat; and
   **d.**  A finish coat providing surface texture and color.

All other conditions remain unchanged.

**ATTACHMENT 2**

# COMMERCIAL GENERAL LIABILITY COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we", "us" and "our" refer to the company providing this insurance.

The word "insured" means any person or organization qualifying as such under Section **II** – Who Is An Insured.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section **V** –Definitions.

## SECTION I – COVERAGES

## COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY

**1. Insuring Agreement**

**a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

**(1)** The amount we will pay for damages is limited as described in Section **III** – Limits Of Insurance; and

**(2)** Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C**.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B**.

**b.** This insurance applies to "bodily injury" and "property damage" only if:

**(1)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

**(2)** The "bodily injury" or "property damage" occurs during the policy period; and

**(3)** Prior to the policy period, no insured listed under Paragraph **1.** of Section **II** – Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

**c.** "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph **1.** of Section **II** – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the policy period.

**d.** "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph **1.** of Section **II** – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

**(1)** Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

**(2)** Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

**(3)** Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

**e.** Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

**ATTACHMENT 2**

## 2. Exclusions

This insurance does not apply to:

### a. Expected Or Intended Injury

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

### b. Contractual Liability

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

**(1)** That the insured would have in the absence of the contract or agreement; or

**(2)** Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorneys' fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:

**(a)** Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

**(b)** Such attorneys' fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

### c. Liquor Liability

"Bodily injury" or "property damage" for which any insured may be held liable by reason of:

**(1)** Causing or contributing to the intoxication of any person;

**(2)** The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

**(3)** Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in:

**(a)** The supervision, hiring, employment, training or monitoring of others by that insured; or

**(b)** Providing or failing to provide transportation with respect to any person that may be under the influence of alcohol;

if the "occurrence" which caused the "bodily injury" or "property damage", involved that which is described in Paragraph **(1), (2)** or **(3)** above.

However, this exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages. For the purposes of this exclusion, permitting a person to bring alcoholic beverages on your premises, for consumption on your premises, whether or not a fee is charged or a license is required for such activity, is not by itself considered the business of selling, serving or furnishing alcoholic beverages.

### d. Workers' Compensation And Similar Laws

Any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law.

### e. Employer's Liability

"Bodily injury" to:

**(1)** An "employee" of the insured arising out of and in the course of:

**(a)** Employment by the insured; or

**(b)** Performing duties related to the conduct of the insured's business; or

**(2)** The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph **(1)** above.

This exclusion applies whether the insured may be liable as an employer or in any other capacity and to any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to liability assumed by the insured under an "insured contract".

© Insurance Services Office, Inc., 2012

**ATTACHMENT 2**

**f. Pollution**

**(1)** "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

**(a)** At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured. However, this subparagraph does not apply to:

**(i)** "Bodily injury" if sustained within a building and caused by smoke, fumes, vapor or soot produced by or originating from equipment that is used to heat, cool or dehumidify the building, or equipment that is used to heat water for personal use, by the building's occupants or their guests;

**(ii)** "Bodily injury" or "property damage" for which you may be held liable, if you are a contractor and the owner or lessee of such premises, site or location has been added to your policy as an additional insured with respect to your ongoing operations performed for that additional insured at that premises, site or location and such premises, site or location is not and never was owned or occupied by, or rented or loaned to, any insured, other than that additional insured; or

**(iii)** "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire";

**(b)** At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

**(c)** Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for:

**(i)** Any insured; or

**(ii)** Any person or organization for whom you may be legally responsible; or

**(d)** At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the "pollutants" are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor. However, this subparagraph does not apply to:

**(i)** "Bodily injury" or "property damage" arising out of the escape of fuels, lubricants or other operating fluids which are needed to perform the normal electrical, hydraulic or mechanical functions necessary for the operation of "mobile equipment" or its parts, if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store or receive them. This exception does not apply if the "bodily injury" or "property damage" arises out of the intentional discharge, dispersal or release of the fuels, lubricants or other operating fluids, or if such fuels, lubricants or other operating fluids are brought on or to the premises, site or location with the intent that they be discharged, dispersed or released as part of the operations being performed by such insured, contractor or subcontractor;

**(ii)** "Bodily injury" or "property damage" sustained within a building and caused by the release of gases, fumes or vapors from materials brought into that building in connection with operations being performed by you or on your behalf by a contractor or subcontractor; or

**(iii)** "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire".

**(e)** At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants".

**ATTACHMENT 2**

**(2)** Any loss, cost or expense arising out of any:

**(a)** Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

**(b)** Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

However, this paragraph does not apply to liability for damages because of "property damage" that the insured would have in the absence of such request, demand, order or statutory or regulatory requirement, or such claim or "suit" by or on behalf of a governmental authority.

**g. Aircraft, Auto Or Watercraft**

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading".

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft that is owned or operated by or rented or loaned to any insured.

This exclusion does not apply to:

**(1)** A watercraft while ashore on premises you own or rent;

**(2)** A watercraft you do not own that is:

**(a)** Less than 26 feet long; and

**(b)** Not being used to carry persons or property for a charge;

**(3)** Parking an "auto" on, or on the ways next to, premises you own or rent, provided the "auto" is not owned by or rented or loaned to you or the insured;

**(4)** Liability assumed under any "insured contract" for the ownership, maintenance or use of aircraft or watercraft; or

**(5)** "Bodily injury" or "property damage" arising out of:

**(a)** The operation of machinery or equipment that is attached to, or part of, a land vehicle that would qualify under the definition of "mobile equipment" if it were not subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged; or

**(b)** The operation of any of the machinery or equipment listed in Paragraph **f.(2)** or **f.(3)** of the definition of "mobile equipment".

**h. Mobile Equipment**

"Bodily injury" or "property damage" arising out of:

**(1)** The transportation of "mobile equipment" by an "auto" owned or operated by or rented or loaned to any insured; or

**(2)** The use of "mobile equipment" in, or while in practice for, or while being prepared for, any prearranged racing, speed, demolition, or stunting activity.

**i. War**

"Bodily injury" or "property damage", however caused, arising, directly or indirectly, out of:

**(1)** War, including undeclared or civil war;

**(2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**(3)** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**j. Damage To Property**

"Property damage" to:

**(1)** Property you own, rent, or occupy, including any costs or expenses incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property;

**(2)** Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;

**(3)** Property loaned to you;

© Insurance Services Office, Inc., 2012 CG 00 01 04 13

**ATTACHMENT 2**

**(4)** Personal property in the care, custody or control of the insured;

**(5)** That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

**(6)** That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

Paragraphs **(1), (3)** and **(4)** of this exclusion do not apply to "property damage" (other than damage by fire) to premises, including the contents of such premises, rented to you for a period of seven or fewer consecutive days. A separate limit of insurance applies to Damage To Premises Rented To You as described in Section **III** – Limits Of Insurance.

Paragraph **(2)** of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.

Paragraphs **(3), (4), (5)** and **(6)** of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph **(6)** of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

**k. Damage To Your Product**

"Property damage" to "your product" arising out of it or any part of it.

**l. Damage To Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

**m. Damage To Impaired Property Or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

**(1)** A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

**(2)** A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

**n. Recall Of Products, Work Or Impaired Property**

Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

**(1)** "Your product";

**(2)** "Your work"; or

**(3)** "Impaired property";

if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

**o. Personal And Advertising Injury**

"Bodily injury" arising out of "personal and advertising injury".

**p. Electronic Data**

Damages arising out of the loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate electronic data.

However, this exclusion does not apply to liability for damages because of "bodily injury".

As used in this exclusion, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

**q. Recording And Distribution Of Material Or Information In Violation Of Law**

"Bodily injury" or "property damage" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

**(1)** The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law;

**(2)** The CAN-SPAM Act of 2003, including any amendment of or addition to such law;

**(3)** The Fair Credit Reporting Act (FCRA), and any amendment of or addition to such law, including the Fair and Accurate Credit Transactions Act (FACTA); or

**ATTACHMENT 2**

**(4)** Any federal, state or local statute, ordinance or regulation, other than the TCPA, CAN-SPAM Act of 2003 or FCRA and their amendments and additions, that addresses, prohibits, or limits the printing, dissemination, disposal, collecting, recording, sending, transmitting, communicating or distribution of material or information.

Exclusions **c.** through **n.** do not apply to damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner. A separate limit of insurance applies to this coverage as described in Section **III** – Limits Of Insurance.

## COVERAGE B – PERSONAL AND ADVERTISING INJURY LIABILITY

**1. Insuring Agreement**

**a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any offense and settle any claim or "suit" that may result. But:

**(1)** The amount we will pay for damages is limited as described in Section **III** – Limits Of Insurance; and

**(2)** Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C.**

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B.**

**b.** This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

**2. Exclusions**

This insurance does not apply to:

**a. Knowing Violation Of Rights Of Another**

"Personal and advertising injury" caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury".

**b. Material Published With Knowledge Of Falsity**

"Personal and advertising injury" arising out of oral or written publication, in any manner, of material, if done by or at the direction of the insured with knowledge of its falsity.

**c. Material Published Prior To Policy Period**

"Personal and advertising injury" arising out of oral or written publication, in any manner, of material whose first publication took place before the beginning of the policy period.

**d. Criminal Acts**

"Personal and advertising injury" arising out of a criminal act committed by or at the direction of the insured.

**e. Contractual Liability**

"Personal and advertising injury" for which the insured has assumed liability in a contract or agreement. This exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement.

**f. Breach Of Contract**

"Personal and advertising injury" arising out of a breach of contract, except an implied contract to use another's advertising idea in your "advertisement".

**g. Quality Or Performance Of Goods – Failure To Conform To Statements**

"Personal and advertising injury" arising out of the failure of goods, products or services to conform with any statement of quality or performance made in your "advertisement".

**h. Wrong Description Of Prices**

"Personal and advertising injury" arising out of the wrong description of the price of goods, products or services stated in your "advertisement".

© Insurance Services Office, Inc., 2012

**ATTACHMENT 2**

#### i. Infringement Of Copyright, Patent, Trademark Or Trade Secret

"Personal and advertising injury" arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights. Under this exclusion, such other intellectual property rights do not include the use of another's advertising idea in your "advertisement".

However, this exclusion does not apply to infringement, in your "advertisement", of copyright, trade dress or slogan.

#### j. Insureds In Media And Internet Type Businesses

"Personal and advertising injury" committed by an insured whose business is:

**(1)** Advertising, broadcasting, publishing or telecasting;

**(2)** Designing or determining content of web sites for others; or

**(3)** An Internet search, access, content or service provider.

However, this exclusion does not apply to Paragraphs **14.a., b.** and **c.** of "personal and advertising injury" under the Definitions section.

For the purposes of this exclusion, the placing of frames, borders or links, or advertising, for you or others anywhere on the Internet, is not by itself, considered the business of advertising, broadcasting, publishing or telecasting.

#### k. Electronic Chatrooms Or Bulletin Boards

"Personal and advertising injury" arising out of an electronic chatroom or bulletin board the insured hosts, owns, or over which the insured exercises control.

#### l. Unauthorized Use Of Another's Name Or Product

"Personal and advertising injury" arising out of the unauthorized use of another's name or product in your e-mail address, domain name or metatag, or any other similar tactics to mislead another's potential customers.

#### m. Pollution

"Personal and advertising injury" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

#### n. Pollution-related

Any loss, cost or expense arising out of any:

**(1)** Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

**(2)** Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

#### o. War

"Personal and advertising injury", however caused, arising, directly or indirectly, out of:

**(1)** War, including undeclared or civil war;

**(2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**(3)** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

#### p. Recording And Distribution Of Material Or Information In Violation Of Law

"Personal and advertising injury" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

**(1)** The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law;

**(2)** The CAN-SPAM Act of 2003, including any amendment of or addition to such law;

**(3)** The Fair Credit Reporting Act (FCRA), and any amendment of or addition to such law, including the Fair and Accurate Credit Transactions Act (FACTA); or

**(4)** Any federal, state or local statute, ordinance or regulation, other than the TCPA, CAN-SPAM Act of 2003 or FCRA and their amendments and additions, that addresses, prohibits, or limits the printing, dissemination, disposal, collecting, recording, sending, transmitting, communicating or distribution of material or information.

**ATTACHMENT 2**

**COVERAGE C – MEDICAL PAYMENTS**

**1. Insuring Agreement**

**a.** We will pay medical expenses as described below for "bodily injury" caused by an accident:

**(1)** On premises you own or rent;

**(2)** On ways next to premises you own or rent; or

**(3)** Because of your operations;

provided that:

**(a)** The accident takes place in the "coverage territory" and during the policy period;

**(b)** The expenses are incurred and reported to us within one year of the date of the accident; and

**(c)** The injured person submits to examination, at our expense, by physicians of our choice as often as we reasonably require.

**b.** We will make these payments regardless of fault. These payments will not exceed the applicable limit of insurance. We will pay reasonable expenses for:

**(1)** First aid administered at the time of an accident;

**(2)** Necessary medical, surgical, X-ray and dental services, including prosthetic devices; and

**(3)** Necessary ambulance, hospital, professional nursing and funeral services.

**2. Exclusions**

We will not pay expenses for "bodily injury":

**a. Any Insured**

To any insured, except "volunteer workers".

**b. Hired Person**

To a person hired to do work for or on behalf of any insured or a tenant of any insured.

**c. Injury On Normally Occupied Premises**

To a person injured on that part of premises you own or rent that the person normally occupies.

**d. Workers' Compensation And Similar Laws**

To a person, whether or not an "employee" of any insured, if benefits for the "bodily injury" are payable or must be provided under a workers' compensation or disability benefits law or a similar law.

**e. Athletics Activities**

To a person injured while practicing, instructing or participating in any physical exercises or games, sports, or athletic contests.

**f. Products-Completed Operations Hazard**

Included within the "products-completed operations hazard".

**g. Coverage A Exclusions**

Excluded under Coverage **A**.

**SUPPLEMENTARY PAYMENTS – COVERAGES A AND B**

**1.** We will pay, with respect to any claim we investigate or settle, or any "suit" against an insured we defend:

**a.** All expenses we incur.

**b.** Up to $250 for cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which the Bodily Injury Liability Coverage applies. We do not have to furnish these bonds.

**c.** The cost of bonds to release attachments, but only for bond amounts within the applicable limit of insurance. We do not have to furnish these bonds.

**d.** All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit", including actual loss of earnings up to $250 a day because of time off from work.

**e.** All court costs taxed against the insured in the "suit". However, these payments do not include attorneys' fees or attorneys' expenses taxed against the insured.

**f.** Prejudgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the applicable limit of insurance, we will not pay any prejudgment interest based on that period of time after the offer.

© Insurance Services Office, Inc., 2012

**ATTACHMENT 2**

**g.** All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance.

These payments will not reduce the limits of insurance.

**2.** If we defend an insured against a "suit" and an indemnitee of the insured is also named as a party to the "suit", we will defend that indemnitee if all of the following conditions are met:

**a.** The "suit" against the indemnitee seeks damages for which the insured has assumed the liability of the indemnitee in a contract or agreement that is an "insured contract";

**b.** This insurance applies to such liability assumed by the insured;

**c.** The obligation to defend, or the cost of the defense of, that indemnitee, has also been assumed by the insured in the same "insured contract";

**d.** The allegations in the "suit" and the information we know about the "occurrence" are such that no conflict appears to exist between the interests of the insured and the interests of the indemnitee;

**e.** The indemnitee and the insured ask us to conduct and control the defense of that indemnitee against such "suit" and agree that we can assign the same counsel to defend the insured and the indemnitee; and

**f.** The indemnitee:

**(1)** Agrees in writing to:

**(a)** Cooperate with us in the investigation, settlement or defense of the "suit";

**(b)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "suit";

**(c)** Notify any other insurer whose coverage is available to the indemnitee; and

**(d)** Cooperate with us with respect to coordinating other applicable insurance available to the indemnitee; and

**(2)** Provides us with written authorization to:

**(a)** Obtain records and other information related to the "suit"; and

**(b)** Conduct and control the defense of the indemnitee in such "suit".

So long as the above conditions are met, attorneys' fees incurred by us in the defense of that indemnitee, necessary litigation expenses incurred by us and necessary litigation expenses incurred by the indemnitee at our request will be paid as Supplementary Payments. Notwithstanding the provisions of Paragraph **2.b.(2)** of Section **I** – Coverage **A** – Bodily Injury And Property Damage Liability, such payments will not be deemed to be damages for "bodily injury" and "property damage" and will not reduce the limits of insurance.

Our obligation to defend an insured's indemnitee and to pay for attorneys' fees and necessary litigation expenses as Supplementary Payments ends when we have used up the applicable limit of insurance in the payment of judgments or settlements or the conditions set forth above, or the terms of the agreement described in Paragraph **f.** above, are no longer met.

## SECTION II – WHO IS AN INSURED

**1.** If you are designated in the Declarations as:

**a.** An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

**b.** A partnership or joint venture, you are an insured. Your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.

**c.** A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

**d.** An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

**e.** A trust, you are an insured. Your trustees are also insureds, but only with respect to their duties as trustees.

**ATTACHMENT 2**

**2.** Each of the following is also an insured:

**a.** Your "volunteer workers" only while performing duties related to the conduct of your business, or your "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, none of these "employees" or "volunteer workers" are insureds for:

**(1)** "Bodily injury" or "personal and advertising injury":

**(a)** To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company), to a co-"employee" while in the course of his or her employment or performing duties related to the conduct of your business, or to your other "volunteer workers" while performing duties related to the conduct of your business;

**(b)** To the spouse, child, parent, brother or sister of that co-"employee" or "volunteer worker" as a consequence of Paragraph **(1)(a)** above;

**(c)** For which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in Paragraph **(1)(a)** or **(b)** above; or

**(d)** Arising out of his or her providing or failing to provide professional health care services.

**(2)** "Property damage" to property:

**(a)** Owned, occupied or used by;

**(b)** Rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by;

you, any of your "employees", "volunteer workers", any partner or member (if you are a partnership or joint venture), or any member (if you are a limited liability company).

**b.** Any person (other than your "employee" or "volunteer worker"), or any organization while acting as your real estate manager.

**c.** Any person or organization having proper temporary custody of your property if you die, but only:

**(1)** With respect to liability arising out of the maintenance or use of that property; and

**(2)** Until your legal representative has been appointed.

**d.** Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this Coverage Part.

**3.** Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify as a Named Insured if there is no other similar insurance available to that organization. However:

**a.** Coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the policy period, whichever is earlier;

**b.** Coverage **A** does not apply to "bodily injury" or "property damage" that occurred before you acquired or formed the organization; and

**c.** Coverage **B** does not apply to "personal and advertising injury" arising out of an offense committed before you acquired or formed the organization.

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

**SECTION III – LIMITS OF INSURANCE**

**1.** The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

**a.** Insureds;

**b.** Claims made or "suits" brought; or

**c.** Persons or organizations making claims or bringing "suits".

**2.** The General Aggregate Limit is the most we will pay for the sum of:

**a.** Medical expenses under Coverage **C;**

**b.** Damages under Coverage **A,** except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard"; and

**c.** Damages under Coverage **B.**

© Insurance Services Office, Inc., 2012

**ATTACHMENT 2**

**3.** The Products-Completed Operations Aggregate Limit is the most we will pay under Coverage **A** for damages because of "bodily injury" and "property damage" included in the "products-completed operations hazard".

**4.** Subject to Paragraph **2.** above, the Personal And Advertising Injury Limit is the most we will pay under Coverage **B** for the sum of all damages because of all "personal and advertising injury" sustained by any one person or organization.

**5.** Subject to Paragraph **2.** or **3.** above, whichever applies, the Each Occurrence Limit is the most we will pay for the sum of:

  **a.** Damages under Coverage **A;** and

  **b.** Medical expenses under Coverage **C**

because of all "bodily injury" and "property damage" arising out of any one "occurrence".

**6.** Subject to Paragraph **5.** above, the Damage To Premises Rented To You Limit is the most we will pay under Coverage **A** for damages because of "property damage" to any one premises, while rented to you, or in the case of damage by fire, while rented to you or temporarily occupied by you with permission of the owner.

**7.** Subject to Paragraph **5.** above, the Medical Expense Limit is the most we will pay under Coverage **C** for all medical expenses because of "bodily injury" sustained by any one person.

The Limits of Insurance of this Coverage Part apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

## SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS

**1. Bankruptcy**

Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under this Coverage Part.

**2. Duties In The Event Of Occurrence, Offense, Claim Or Suit**

  **a.** You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

    **(1)** How, when and where the "occurrence" or offense took place;

    **(2)** The names and addresses of any injured persons and witnesses; and

    **(3)** The nature and location of any injury or damage arising out of the "occurrence" or offense.

  **b.** If a claim is made or "suit" is brought against any insured, you must:

    **(1)** Immediately record the specifics of the claim or "suit" and the date received; and

    **(2)** Notify us as soon as practicable.

    You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

  **c.** You and any other involved insured must:

    **(1)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

    **(2)** Authorize us to obtain records and other information;

    **(3)** Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

    **(4)** Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

  **d.** No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

**3. Legal Action Against Us**

No person or organization has a right under this Coverage Part:

  **a.** To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

  **b.** To sue us on this Coverage Part unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured; but we will not be liable for damages that are not payable under the terms of this Coverage Part or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

**ATTACHMENT 2**

## 4. Other Insurance

If other valid and collectible insurance is available to the insured for a loss we cover under Coverages **A** or **B** of this Coverage Part, our obligations are limited as follows:

**a. Primary Insurance**

This insurance is primary except when Paragraph **b.** below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in Paragraph **c.** below.

**b. Excess Insurance**

**(1)** This insurance is excess over:

**(a)** Any of the other insurance, whether primary, excess, contingent or on any other basis:

**(i)** That is Fire, Extended Coverage, Builder's Risk, Installation Risk or similar coverage for "your work";

**(ii)** That is Fire insurance for premises rented to you or temporarily occupied by you with permission of the owner;

**(iii)** That is insurance purchased by you to cover your liability as a tenant for "property damage" to premises rented to you or temporarily occupied by you with permission of the owner; or

**(iv)** If the loss arises out of the maintenance or use of aircraft, "autos" or watercraft to the extent not subject to Exclusion **g.** of Section **I** – Coverage **A** – Bodily Injury And Property Damage Liability.

**(b)** Any other primary insurance available to you covering liability for damages arising out of the premises or operations, or the products and completed operations, for which you have been added as an additional insured.

**(2)** When this insurance is excess, we will have no duty under Coverages **A** or **B** to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit". If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

**(3)** When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

**(a)** The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

**(b)** The total of all deductible and self-insured amounts under all that other insurance.

**(4)** We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this Coverage Part.

**c. Method Of Sharing**

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

## 5. Premium Audit

**a.** We will compute all premiums for this Coverage Part in accordance with our rules and rates.

**b.** Premium shown in this Coverage Part as advance premium is a deposit premium only. At the close of each audit period we will compute the earned premium for that period and send notice to the first Named Insured. The due date for audit and retrospective premiums is the date shown as the due date on the bill. If the sum of the advance and audit premiums paid for the policy period is greater than the earned premium, we will return the excess to the first Named Insured.

**c.** The first Named Insured must keep records of the information we need for premium computation, and send us copies at such times as we may request.

## 6. Representations

By accepting this policy, you agree:

**a.** The statements in the Declarations are accurate and complete;

© Insurance Services Office, Inc., 2012

**ATTACHMENT 2**

**b.** Those statements are based upon representations you made to us; and

**c.** We have issued this policy in reliance upon your representations.

**7. Separation Of Insureds**

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this Coverage Part to the first Named Insured, this insurance applies:

**a.** As if each Named Insured were the only Named Insured; and

**b.** Separately to each insured against whom claim is made or "suit" is brought.

**8. Transfer Of Rights Of Recovery Against Others To Us**

If the insured has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

**9. When We Do Not Renew**

If we decide not to renew this Coverage Part, we will mail or deliver to the first Named Insured shown in the Declarations written notice of the nonrenewal not less than 30 days before the expiration date.

If notice is mailed, proof of mailing will be sufficient proof of notice.

## SECTION V – DEFINITIONS

**1.** "Advertisement" means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters. For the purposes of this definition:

**a.** Notices that are published include material placed on the Internet or on similar electronic means of communication; and

**b.** Regarding web sites, only that part of a web site that is about your goods, products or services for the purposes of attracting customers or supporters is considered an advertisement.

**2.** "Auto" means:

**a.** A land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment; or

**b.** Any other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged.

However, "auto" does not include "mobile equipment".

**3.** "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

**4.** "Coverage territory" means:

**a.** The United States of America (including its territories and possessions), Puerto Rico and Canada;

**b.** International waters or airspace, but only if the injury or damage occurs in the course of travel or transportation between any places included in Paragraph **a.** above; or

**c.** All other parts of the world if the injury or damage arises out of:

**(1)** Goods or products made or sold by you in the territory described in Paragraph **a.** above;

**(2)** The activities of a person whose home is in the territory described in Paragraph **a.** above, but is away for a short time on your business; or

**(3)** "Personal and advertising injury" offenses that take place through the Internet or similar electronic means of communication;

provided the insured's responsibility to pay damages is determined in a "suit" on the merits, in the territory described in Paragraph **a.** above or in a settlement we agree to.

**5.** "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

**6.** "Executive officer" means a person holding any of the officer positions created by your charter, constitution, bylaws or any other similar governing document.

**7.** "Hostile fire" means one which becomes uncontrollable or breaks out from where it was intended to be.

**8.** "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

**a.** It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

**b.** You have failed to fulfill the terms of a contract or agreement;

if such property can be restored to use by the repair, replacement, adjustment or removal of "your product" or "your work" or your fulfilling the terms of the contract or agreement.

**ATTACHMENT 2**

9. "Insured contract" means:

   a. A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

   b. A sidetrack agreement;

   c. Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

   d. An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

   e. An elevator maintenance agreement;

   f. That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

   Paragraph **f.** does not include that part of any contract or agreement:

   (1) That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, road-beds, tunnel, underpass or crossing;

   (2) That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

      (a) Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

      (b) Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

   (3) Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in **(2)** above and supervisory, inspection, architectural or engineering activities.

10. "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

11. "Loading or unloading" means the handling of property:

   a. After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or "auto";

   b. While it is in or on an aircraft, watercraft or "auto"; or

   c. While it is being moved from an aircraft, watercraft or "auto" to the place where it is finally delivered;

   but "loading or unloading" does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or "auto".

12. "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

   a. Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

   b. Vehicles maintained for use solely on or next to premises you own or rent;

   c. Vehicles that travel on crawler treads;

   d. Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

      (1) Power cranes, shovels, loaders, diggers or drills; or

      (2) Road construction or resurfacing equipment such as graders, scrapers or rollers;

   e. Vehicles not described in Paragraph **a., b., c.** or **d.** above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

      (1) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

      (2) Cherry pickers and similar devices used to raise or lower workers;

   f. Vehicles not described in Paragraph **a., b., c.** or **d.** above maintained primarily for purposes other than the transportation of persons or cargo.

 © Insurance Services Office, Inc., 2012

**ATTACHMENT 2**

However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

**(1)** Equipment designed primarily for:

    **(a)** Snow removal;

    **(b)** Road maintenance, but not construction or resurfacing; or

    **(c)** Street cleaning;

**(2)** Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

**(3)** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

However, "mobile equipment" does not include any land vehicles that are subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged. Land vehicles subject to a compulsory or financial responsibility law or other motor vehicle insurance law are considered "autos".

**13.** "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

**14.** "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

**a.** False arrest, detention or imprisonment;

**b.** Malicious prosecution;

**c.** The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

**d.** Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

**e.** Oral or written publication, in any manner, of material that violates a person's right of privacy;

**f.** The use of another's advertising idea in your "advertisement"; or

**g.** Infringing upon another's copyright, trade dress or slogan in your "advertisement".

**15.** "Pollutants" mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

**16.** "Products-completed operations hazard":

**a.** Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

**(1)** Products that are still in your physical possession; or

**(2)** Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

    **(a)** When all of the work called for in your contract has been completed.

    **(b)** When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

    **(c)** When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

**b.** Does not include "bodily injury" or "property damage" arising out of:

**(1)** The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any insured;

**(2)** The existence of tools, uninstalled equipment or abandoned or unused materials; or

**(3)** Products or operations for which the classification, listed in the Declarations or in a policy Schedule, states that products-completed operations are subject to the General Aggregate Limit.

**17.** "Property damage" means:

**a.** Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

**b.** Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

For the purposes of this insurance, electronic data is not tangible property.

**ATTACHMENT 2**

As used in this definition, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

**18.** "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies are alleged. "Suit" includes:

**a.** An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

**b.** Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

**19.** "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

**20.** "Volunteer worker" means a person who is not your "employee", and who donates his or her work and acts at the direction of and within the scope of duties determined by you, and is not paid a fee, salary or other compensation by you or anyone else for their work performed for you.

**21.** "Your product":

**a.** Means:

**(1)** Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

**(a)** You;

**(b)** Others trading under your name; or

**(c)** A person or organization whose business or assets you have acquired; and

**(2)** Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

**b.** Includes:

**(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

**(2)** The providing of or failure to provide warnings or instructions.

**c.** Does not include vending machines or other property rented to or located for the use of others but not sold.

**22.** "Your work":

**a.** Means:

**(1)** Work or operations performed by you or on your behalf; and

**(2)** Materials, parts or equipment furnished in connection with such work or operations.

**b.** Includes:

**(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and

**(2)** The providing of or failure to provide warnings or instructions.

© Insurance Services Office, Inc., 2012

**ATTACHMENT 2**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# TEXAS CHANGES

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** With regard to liability for Bodily Injury, Property Damage and Personal And Advertising Injury, unless we are prejudiced by the insured's or your failure to comply with the requirement, no provision of this Coverage Part requiring you or any insured to give notice of "occurrence", claim or "suit", or forward demands, notices, summonses or legal papers in connection with a claim or "suit" will bar coverage under this Coverage Part.

© ISO Properties, Inc., 2005

**ATTACHMENT 2**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EXCLUSION – ACCESS OR DISCLOSURE OF CONFIDENTIAL OR PERSONAL INFORMATION AND DATA-RELATED LIABILITY – LIMITED BODILY INJURY EXCEPTION NOT INCLUDED

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** Exclusion **2.p.** of **Section I – Coverage A – Bodily Injury And Property Damage Liability** is replaced by the following:

**2. Exclusions**

This insurance does not apply to:

**p. Access Or Disclosure Of Confidential Or Personal Information And Data-related Liability**

Damages arising out of:

**(1)** Any access to or disclosure of any person's or organization's confidential or personal information, including patents, trade secrets, processing methods, customer lists, financial information, credit card information, health information or any other type of nonpublic information; or

**(2)** The loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate electronic data.

This exclusion applies even if damages are claimed for notification costs, credit monitoring expenses, forensic expenses, public relations expenses or any other loss, cost or expense incurred by you or others arising out of that which is described in Paragraph **(1)** or **(2)** above.

As used in this exclusion, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

**B.** The following is added to Paragraph **2. Exclusions** of **Section I – Coverage B – Personal And Advertising Injury Liability:**

**2. Exclusions**

This insurance does not apply to:

**Access Or Disclosure Of Confidential Or Personal Information**

"Personal and advertising injury" arising out of any access to or disclosure of any person's or organization's confidential or personal information, including patents, trade secrets, processing methods, customer lists, financial information, credit card information, health information or any other type of nonpublic information.

This exclusion applies even if damages are claimed for notification costs, credit monitoring expenses, forensic expenses, public relations expenses or any other loss, cost or expense incurred by you or others arising out of any access to or disclosure of any person's or organization's confidential or personal information.

© Insurance Services Office, Inc., 2013

**ATTACHMENT 2**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# SILICA OR SILICA-RELATED DUST EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** The following exclusion is added to Paragraph **2., Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage Liability:**

**2. Exclusions**

This insurance does not apply to:

**Silica Or Silica-Related Dust**

**a.** "Bodily injury" arising, in whole or in part, out of the actual, alleged, threatened or suspected inhalation of, or ingestion of, "silica" or "silica-related dust".

**b.** "Property damage" arising, in whole or in part, out of the actual, alleged, threatened or suspected contact with, exposure to, existence of, or presence of, "silica" or "silica-related dust".

**c.** Any loss, cost or expense arising, in whole or in part, out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to or assessing the effects of, "silica" or "silica-related dust", by any insured or by any other person or entity.

**B.** The following exclusion is added to Paragraph **2., Exclusions** of **Section I – Coverage B – Personal And Advertising Injury Liability:**

**2. Exclusions**

This insurance does not apply to:

**Silica Or Silica-Related Dust**

**a.** "Personal and advertising injury" arising, in whole or in part, out of the actual, alleged, threatened or suspected inhalation of, ingestion of, contact with, exposure to, existence of, or presence of, "silica" or "silica-related dust".

**b.** Any loss, cost or expense arising, in whole or in part, out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to or assessing the effects of, "silica" or "silica-related dust", by any insured or by any other person or entity.

**C.** The following definitions are added to the **Definitions** Section:

**1.** "Silica" means silicon dioxide (occurring in crystalline, amorphous and impure forms), silica particles, silica dust or silica compounds.

**2.** "Silica-related dust" means a mixture or combination of silica and other dust or particles.

 © ISO Properties, Inc., 2004

**ATTACHMENT 2**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# AMENDMENT OF INSURED CONTRACT DEFINITION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

The definition of "insured contract" in the **Definitions** section is replaced by the following:

"Insured contract" means:

**a.** A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

**b.** A sidetrack agreement;

**c.** Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

**d.** An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

**e.** An elevator maintenance agreement;

**f.** That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization, provided the "bodily injury" or "property damage" is caused, in whole or in part, by you or by those acting on your behalf. However, such part of a contract or agreement shall only be considered an "insured contract" to the extent your assumption of the tort liability is permitted by law. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

Paragraph **f.** does not include that part of any contract or agreement:

**(1)** That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, road-beds, tunnel, underpass or crossing;

**(2)** That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

   **(a)** Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

   **(b)** Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

**(3)** Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in **(2)** above and supervisory, inspection, architectural or engineering activities.

© Insurance Services Office, Inc., 2012

**ATTACHMENT 2**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# TEXAS CHANGES – EMPLOYMENT-RELATED PRACTICES EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** The following exclusion is added to Paragraph **2., Exclusions** of Section **I – Coverage A – Bodily Injury And Property Damage Liability:**

This insurance does not apply to:

"Bodily injury" to:

**(1)** A person arising out of any:

    **(a)** Refusal to employ that person;

    **(b)** Termination of that person's employment; or

    **(c)** Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination or malicious prosecution directed at that person; or

**(2)** The spouse, child, parent, brother or sister of that person as a consequence of "bodily injury" to that person at whom any of the employment-related practices described in Paragraphs **(a), (b)** or **(c)** above is directed.

This exclusion applies:

**(1)** Whether the injury-causing event described in Paragraphs **(a), (b)** or **(c)** above occurs before employment, during employment or after employment of that person;

**(2)** Whether the insured may be liable as an employer or in any other capacity; and

**(3)** To any obligation to share damages with or to repay someone else who must pay damages because of the injury.

**B.** The following exclusion is added to Paragraph **2., Exclusions** of Section **I – Coverage B – Personal And Advertising Injury Liability:**

This insurance does not apply to:

"Personal and advertising injury" to:

**(1)** A person arising out of any:

    **(a)** Refusal to employ that person;

    **(b)** Termination of that person's employment; or

    **(c)** Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination or malicious prosecution directed at that person; or

**(2)** The spouse, child, parent, brother or sister of that person as a consequence of "personal and advertising injury" to that person at whom any of the employment-related practices described in Paragraphs **(a), (b)** or **(c)** above is directed.

 © ISO Properties, Inc., 2006

**ATTACHMENT 2**

# COMMON POLICY CONDITIONS

All Coverage Parts included in this policy are subject to the following conditions.

## A. Cancellation

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2. We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

   a. 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

   b. 30 days before the effective date of cancellation if we cancel for any other reason.

3. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

5. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

6. If notice is mailed, proof of mailing will be sufficient proof of notice.

## B. Changes

This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

## C. Examination Of Your Books And Records

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

## D. Inspections And Surveys

1. We have the right to:

   a. Make inspections and surveys at any time;

   b. Give you reports on the conditions we find; and

   c. Recommend changes.

2. We are not obligated to make any inspections, surveys, reports or recommendations and any such actions we do undertake relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:

   a. Are safe or healthful; or

   b. Comply with laws, regulations, codes or standards.

3. Paragraphs 1. and 2. of this condition apply not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

4. Paragraph 2. of this condition does not apply to any inspections, surveys, reports or recommendations we may make relative to certification, under state or municipal statutes, ordinances or regulations, of boilers, pressure vessels or elevators.

## E. Premiums

The first Named Insured shown in the Declarations:

1. Is responsible for the payment of all premiums; and

2. Will be the payee for any return premiums we pay.

## F. Transfer Of Your Rights And Duties Under This Policy

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual named insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

 Copyright, Insurance Services Office, Inc., 1998 □

**ATTACHMENT 2**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT
### (Broad Form)

This endorsement modifies insurance provided under the following:

COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
FARM COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
MEDICAL PROFESSIONAL LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
UNDERGROUND STORAGE TANK POLICY

**1.** The insurance does not apply:

**A.** Under any Liability Coverage, to "bodily injury" or "property damage":

**(1)** With respect to which an "insured" under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

**(2)** Resulting from the "hazardous properties" of "nuclear material" and with respect to which **(a)** any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or **(b)** the "insured" is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

**B.** Under any Medical Payments coverage, to expenses incurred with respect to "bodily injury" resulting from the "hazardous properties" of "nuclear material" and arising out of the operation of a "nuclear facility" by any person or organization.

**C.** Under any Liability Coverage, to "bodily injury" or "property damage" resulting from "hazardous properties" of "nuclear material", if:

**(1)** The "nuclear material" **(a)** is at any "nuclear facility" owned by, or operated by or on behalf of, an "insured" or **(b)** has been discharged or dispersed therefrom;

**(2)** The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of, by or on behalf of an "insured"; or

**(3)** The "bodily injury" or "property damage" arises out of the furnishing by an "insured" of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility", but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion **(3)** applies only to "property damage" to such "nuclear facility" and any property thereat.

**2.** As used in this endorsement:

"Hazardous properties" includes radioactive, toxic or explosive properties.

"Nuclear material" means "source material", "special nuclear material" or "by-product material".

 © ISO Properties, Inc., 2007

**ATTACHMENT 2**

"Source material", "special nuclear material", and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof.

"Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor".

"Waste" means any waste material **(a)** containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content, and **(b)** resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility".

"Nuclear facility" means:

**(a)** Any "nuclear reactor";

**(b)** Any equipment or device designed or used for **(1)** separating the isotopes of uranium or plutonium, **(2)** processing or utilizing "spent fuel", or **(3)** handling, processing or packaging "waste";

**(c)** Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the "insured" at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

**(d)** Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste";

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations.

"Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.

"Property damage" includes all forms of radioactive contamination of property.

  © ISO Properties, Inc., 2007  IL 00 21 09 08  □

**ATTACHMENT 2**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# TEXAS CHANGES – DUTIES

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
FARM COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
MEDICAL PROFESSIONAL LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART

The following is added to the **Duties** Condition:

We will notify the first Named Insured in writing of:

1. An initial offer to settle a claim made or "suit" brought against any insured ("insured") under this coverage. The notice will be given not later than the 10th day after the date on which the offer is made.

2. Any settlement of a claim made or "suit" brought against the insured ("insured") under this coverage. The notice will be given not later than the 30th day after the date of the settlement.

 © Insurance Services Office, Inc., 2011

**ATTACHMENT 2**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# TEXAS CHANGES – CANCELLATION AND NONRENEWAL PROVISIONS FOR CASUALTY LINES AND COMMERCIAL PACKAGE POLICIES

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL LIABILITY UMBRELLA COVERAGE PART
EMPLOYMENT-RELATED PRACTICES LIABILITY
FARM COVERAGE PART – FARM LIABILITY COVERAGE FORM
LIQUOR LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

This endorsement also modifies insurance provided under the following when written as part of a Commercial Package Policy:

CAPITAL ASSETS PROGRAM (OUTPUT POLICY) COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL INLAND MARINE COVERAGE PART
COMMERCIAL LIABILITY UMBRELLA COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
CRIME AND FIDELITY COVERAGE PART
EMPLOYMENT-RELATED PRACTICES LIABILITY
EQUIPMENT BREAKDOWN COVERAGE PART
FARM COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

**A.** Paragraph **2.** of the **Cancellation** Common Policy Condition is replaced by the following:

**2.** We may cancel this policy:

**a.** By mailing or delivering to the first Named Insured written notice of cancellation, stating the reason for cancellation, at least 10 days before the effective date of cancellation.

However, if this policy covers a condominium association, and the condominium property contains at least one residence or the condominium declarations conform with the Texas Uniform Condominium Act, then the notice of cancellation, as described above, will be provided to the first Named Insured 30 days before the effective date of cancellation. We will also provide 30 days' written notice to each unit-owner to whom we issued a certificate or memorandum of insurance, by mailing or delivering the notice to each last mailing address known to us.

 © Insurance Services Office, Inc., 2013

**ATTACHMENT 2**

**b.** For the following reasons, if this policy does not provide coverage to a governmental unit, as defined under 28 TEX. ADMIN. CODE, Section 5.7001 or on one- and two-family dwellings:

**(1)** If this policy has been in effect for 60 days or less, we may cancel for any reason except that, under the provisions of the Texas Insurance Code, we may not cancel this policy solely because the policyholder is an elected official.

**(2)** If this policy has been in effect for more than 60 days, or if it is a renewal or continuation of a policy issued by us, we may cancel only for one or more of the following reasons:

    **(a)** Fraud in obtaining coverage;

    **(b)** Failure to pay premiums when due;

    **(c)** An increase in hazard within the control of the insured which would produce an increase in rate;

    **(d)** Loss of our reinsurance covering all or part of the risk covered by the policy; or

    **(e)** If we have been placed in supervision, conservatorship or receivership and the cancellation is approved or directed by the supervisor, conservator or receiver.

**c.** For the following reasons, if this policy provides coverage to a governmental unit, as defined under 28 TEX. ADMIN. CODE, Section 5.7001 or on one- and two-family dwellings:

**(1)** If this policy has been in effect for less than 90 days, we may cancel coverage for any reason.

**(2)** If this policy has been in effect for 90 days or more, or if it is a renewal or continuation of a policy issued by us, we may cancel coverage, only for the following reasons:

    **(a)** If the first Named Insured does not pay the premium or any portion of the premium when due;

    **(b)** If the Texas Department of Insurance determines that continuation of this policy would result in violation of the Texas Insurance Code or any other law governing the business of insurance in Texas;

    **(c)** If the Named Insured submits a fraudulent claim; or

    **(d)** If there is an increase in the hazard within the control of the Named Insured which would produce an increase in rate.

**B.** The following condition is added and supersedes any provision to the contrary:

**Nonrenewal**

**1.** We may elect not to renew this policy except that, under the provisions of the Texas Insurance Code, we may not refuse to renew this policy solely because the policyholder is an elected official.

**2.** This paragraph, **2.**, applies unless the policy qualifies under Paragraph **3.** below.

If we elect not to renew this policy, we may do so by mailing or delivering to the first Named Insured, at the last mailing address known to us, written notice of nonrenewal, stating the reason for nonrenewal, at least 60 days before the expiration date. If notice is mailed or delivered less than 60 days before the expiration date, this policy will remain in effect until the 61st day after the date on which the notice is mailed or delivered. Earned premium for any period of coverage that extends beyond the expiration date will be computed pro rata based on the previous year's premium.

**3.** If this policy covers a condominium association, and the condominium property contains at least one residence or the condominium declarations conform with the Texas Uniform Condominium Act, then we will mail or deliver written notice of nonrenewal, at least 30 days before the expiration or anniversary date of the policy, to:

    **a.** The first Named Insured; and

    **b.** Each unit-owner to whom we issued a certificate or memorandum of insurance.

We will mail or deliver such notice to each last mailing address known to us.

**4.** If notice is mailed, proof of mailing will be sufficient proof of notice.

**5.** The transfer of a policyholder between admitted companies within the same insurance group is not considered a refusal to renew.

© Insurance Services Office, Inc., 2013

**ATTACHMENT 2**

# NOTICE OF AVAILABILITY OF LOSS CONTROL SERVICES

## STATE OF TEXAS

TO ALL COMMERCIAL INSURANCE POLICYHOLDERS:

Thank you for placing your commercial insurance with us.

This letter is to inform you that Mid-Continent Group has Safety Engineering / Loss Control Services to assist you with your safety and loss control activities.

An effective loss prevention program is one way responsible employers help to control cost.  In an effort to assist in developing an effective accident prevention program, the Safety Engineering / Loss Control Department of Mid-Continent Group is available to:

- evaluate the accident prevention activities currently being implemented to identify strengths and weaknesses.

- conduct surveys of physical conditions and operational work practices to assist in accident prevention.

- analyze accident data to determine frequency and severity trends.

- consult in administrative procedures and supervisory training for exposure recognition and reduction.

If any time we can be of service, please feel free to contact our Safety Engineering / Loss Control Department at 800-306-6963.

Sincerely,

Mid-Continent Group
Robert McAnulty
Assistant Vice President
Premium Audit and Loss Control Services

**ATTACHMENT 2**

# CONTACT INFORMATION SHEET

| IMPORTANT NOTICE | AVISO IMPORTANTE |
|---|---|
| To obtain information or make a complaint: | Para obtener información o para presentar una queja: |
| You may call Mid-Continent Casualty Group's toll-free telephone number for information or to make a complaint at: | Usted puede llamar al número de teléfono gratuito de Mid-Continent Casualty Group's para obtener información o para presentar una queja al: |
| 1-800-722-4994 | 1-800-722-4994 |
| You may contact the Texas Department of Insurance to obtain information on companies, coverages, rights or complaints at: | Usted puede comunicarse con el Departamento de Seguros do Texas para obtener información sobre compañías, coberturas, derechos o quejas al: |
| 1-800-252-3439 | 1-800-252-3439 |
| You may write the Texas Department of Insurance: | Usted puede escribir al Departamento de Seguros de Texas a: |
| P. O. Box 149104<br>Austin, Texas  78714-9104 | P. O. Box 149104<br>Austin, TX  78714-9104 |
| FAX (512) 490-1007 | FAX (512) 490-1007 |
| Web: www.tdi.texas.gov | Sitio web: www.tdi.texas.gov |
| E-mail:<br>ConsumerProtection@tdi.texas.gov | E-mail:<br>ConsumerProtection@tdi.texas.gov |
| PREMIUM OR CLAIM DISPUTES:<br>Should you have a dispute concerning your premium or about a claim you should contact the Mid-Continent Casualty Group first.  If the dispute is not resolved, you may contact the Texas Department of Insurance. | DISPUTAS POR PRIMAS DE SEGUROS O RECLAMACIONES: Si tiene una disputa relacionada con  su prima de seguro o con una  reclamación, usted debe comunicarse con la compañía  primero. Si la disputa no es resuelta, puede comunicarse con el Departamento  de Seguros de Texas. |
| ATTACH THIS NOTICE TO YOUR POLICY:<br>This notice is for information only and does not become a part or condition of the attached document. | ADJUNTE ESTE AVISO A SU POLIZA: Este aviso es solamente  para  propósitos  información  y  no  se convierte  en  parte  o  e  condición  del  documento adjunto. |

**ATTACHMENT 2**

# MID-CONTINENT GROUP®
# PRIVACY NOTICE
# AND
# NOTICE OF INFORMATION PRACTICES

The members of Mid-Continent Group ("Mid-Continent," including those companies listed at the end of this Notice) respect your right to privacy.

We want you to know about our procedures for protecting your privacy and your rights and responsibilities regarding information we receive about you.  We want you to understand how we gather information about you, how we protect it, and how you can help ensure its accuracy.  Although we may provide this Notice as information to additional persons, the terms of this Notice apply to those individuals who inquire about or obtain insurance from Mid-Continent primarily for personal, family or household purposes, and certain group insurance plans.  We will provide our customers with a copy of the most recent notice of our privacy policy at least annually and more often if we make any changes affecting their rights under our privacy policy.  This Notice applies to current and former customers of Mid-Continent, but does not in any way imply or affect insurance coverage.  You can find the online version of this Notice on our web site at www.mcg-ins.com.

Because Mid-Continent does not share your information outside of permitted exceptions, there is no need for you to take any action under this Notice.  If we change our practices in the future, we will advise you and, if applicable, enable you to "opt-out" of certain sharing.

## 1.     What kind of information is collected about you?

We get most of our information about you directly from you, such as your name, address, social security number, income level and certain other financial information, on insurance applications and other forms that you provide to us.  While in some cases the information you provide to your insurance representative during the insurance application process gives us all the information we need to evaluate you or your property for insurance, there are instances when we may need additional information or may need to verify information you have given us.  In those cases, we may obtain information from outside sources at our own expense.

It is common for an insurance company to ask an independent source to verify and supplement information given on an insurance application.  There are many such independent companies, commonly called "consumer reporting agencies," which are in the business of providing independent information to insurance and other financial services companies.  We will treat the information we receive about you from an independent reporting agency in accordance with the terms of this Notice.  Upon our receipt of your written request sent to the address set forth in Section 5, we will inform you of the name and address of any agency we have used to prepare a report on you so that you can contact the agency.

Once you have been an insured customer of ours for a period of time, your record may contain information related to our experiences and transactions with you, such as insurance policy coverage, premiums and payment history, and any claims you make under your insurance policy.  For example, information collected by a claims representative and any policy or fire report will be retained by us.  Any information that we collect in connection with an insurance claim will be kept in accordance with this Notice.

Each company within Mid-Continent Group may disclose information about you to an affiliate regarding its transactions and experiences with you (such as your payment or claims history).  We do not currently share other credit-related information, except as permitted or required by law.

Finally, we do use "cookies" when you interact with our web sites to make that experience easy and meaningful for you.  When you visit our web site, our web server sends a cookie to your computer.  A cookie is an electronically transmitted file that holds small pieces of information.  When you navigate through our web site, your browser "requests" pages for you to view, and that request will include the information stored in the cookie we previously sent to your computer.  This process is like an electronic "handshake" between our system and your computer; the information exchanged allows us to recognize your browser.

Cookies are used to collect and store only the following information: the visitor's domain name, the Internet address of the web site from which the visitor linked directly to our web site, the pages of our site that the visitor views and the length of time spent on each page, browser and operating system platform type, and the date and time the visitor accessed our site.

**ATTACHMENT 2**

Cookies, as well as data taken from them, do not identify you personally. They merely recognize your browser. Unless you choose to identify yourself to us, either by responding to a promotional offer, buying a policy, or registering for an online service, you remain anonymous.

Session cookies exist only during an online session with Mid-Continent. Session cookies allow you to conduct transactions or requests on our web site. Without the session cookie information, we would not be able to complete your web transactions securely. Session cookies help us make sure you are who you say you are after you have logged in. We do not sell this or any other information about you to other web sites, merchants or financial institutions.

**2.    What do we do with information about you?**

Information about you will be kept in our insurance policy records. We will refer to and use that information for purposes related to issuing and servicing insurance policies and settling claims. Generally, personal information about you in our records will not be disclosed by us to any external organization without your prior authorization. However, we may, as permitted by law, share information about you contained in our files with certain persons or organizations such as:

> your insurance representative,

> persons who represent you in a fiduciary capacity, including your attorney or trustee, or who have a legal interest in your insurance policy,

> adjusters, appraisers, auditors, investigators and attorneys,

> persons or organizations who need the information to perform a business, professional or insurance function for us,

> other insurance companies, agents or consumer reporting agencies as information is needed in connection with any insurance application, policy or claim involving you,

> medical professionals to inform you of a medical condition of which you may not be aware,

> persons or organizations that conduct research, including actuarial or underwriting studies, provided that no individual information may be identified in any research study report,

> persons or organizations that perform marketing services on our behalf or to other financial institutions with whom we have joint marketing agreements,

> our affiliated companies,

> to a court, state insurance department or other government agency pursuant to a summons, court order, search warrant, subpoena, or as otherwise required by law or regulation.

**3.    Who has access to your information?**

Mid-Continent currently incorporates a system of passwords and other appropriate physical, electronic and procedural safeguards to protect against unauthorized access to potentially private information. We will educate our employees about the terms of this Notice and the importance of confidentiality and customer privacy. Employees who gain unauthorized access or who otherwise violate our privacy policy are subject to disciplinary action up to and including termination of employment. We plan to monitor and evaluate our information security program and available security software in light of relevant changes in technology to determine ways to increase protections to the security or integrity of our records and information.

**MI 90 46 06 10**                    Includes copyrighted material of Insurance Services Office,                    **Page 2 of 3**
Inc., with its permission

**ATTACHMENT 2**

**4. How can you review recorded information about you?**

Generally, you have the right to review and receive a copy of the recorded personal information about you contained in our files with respect to a particular policy number, except for certain legal and medical documents. You have the further rights to request that we correct any of this information. To exercise these rights, you must send to us a notarized request at the address set forth below stating your complete name, address, insurance policy number, daytime phone number, and a copy of your driver's license or other personal identification. If you believe any information is incorrect, we will investigate and correct it if we can substantiate the error. Even if we do not correct the information, you have the right to file with us a written statement of dispute which we will include in any future disclosure of the information.

**5. How can you contact us?**

If, after reading this, you have any questions about our privacy policy, please write to us at the following address:

MID-CONTINENT GROUP
1437 S. Boulder
Suite 200
Tulsa, OK 74119
Attn: Compliance Office - Privacy

Mid-Continent Casualty Company
Mid-Continent Assurance Company
Oklahoma Surety Company

**ATTACHMENT 2**

# FIGHTING INSURANCE FRAUD

## INSURANCE FRAUD COSTS YOU MONEY!

More than 10 percent of all insurance claims are fraudulent.  Preventing insurance fraud will directly benefit you by lowering the insurance premiums you pay.

## MID-CONTINENT CASUALTY COMPANY

is committed to putting a stop to insurance fraud.  Help us by bringing this costly crime to a halt.  If you are aware of an individual committing fraud, call the Texas Department of Insurance Fraud Hotline at **1-888-327-8818**.

## MID-CONTINENT CASUALTY COMPANY

and the Texas Committee on Insurance Fraud are fighting insurance fraud through public education, communication and cooperation.

**ATTACHMENT 2**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

## ECONOMIC AND TRADE SANCTIONS CLAUSE

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL INLAND MARINE COVERAGE PART
COMMERCIAL LIABILITY UMBRELLA COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART

This insurance does not apply to the extent that trade or economic sanctions or other laws or regulations prohibit us from providing insurance.

**ATTACHMENT 2**

# TEXAS DISCLOSURE FORM
# EXTERIOR INSULATION AND FINISH SYSTEM

## (EXCLUDING LARGE RISKS)

We (the insurance company) acknowledge that the terms, conditions and coverages provided in this policy have been negotiated in good faith with you (the insured).  You have agreed to accept such terms, conditions and coverages.

The following additional exclusions and/or limitations, which may not have been in your previous policy are included in this policy:

**Type of Coverage**
**Limited or Excluded**

Insurance provided by endorsement **ML 1001 - Exterior Insulation and Finish System Endorsement** shall not apply if "your work" was completed more than 365 days prior to the date of the "occurrence".

Other insurance companies may or may not have these exclusions and/or limitations in their current policy.

## ATTACHMENT 2

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# TEXAS DISCLOSURE FORM
# LEAD
## (EXCLUDING LARGE RISKS)

We (the insurance company) acknowledge that the terms, conditions and coverages provided in this policy have been negotiated in good faith with you (the insured).  You have agreed to accept such terms, conditions and coverages.

The following <u>additional</u> exclusions and/or limitations, which may not have been in your previous policy are included in this policy:

**Type of Coverage**
<u>**Limited or Excluded**</u>

**ML 1439 - Exclusion-Lead**

Other insurance companies may or may not have these exclusions and/or limitations in their current policy.

**ATTACHMENT 2**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

## TEXAS DISCLOSURE FORM
## ASBESTOS
### (EXCLUDING LARGE RISKS)

We (the insurance company) acknowledge that the terms, conditions and coverages provided in this policy have been negotiated in good faith with you (the insured).  You have agreed to accept such terms, conditions and coverages.

The following <u>additional</u> exclusions and/or limitations, which may not have been in your previous policy are included in this policy:

**Type of Coverage**
**<u>Limited or Excluded</u>**

**ML 1344 - Exclusion-Asbestos**

Other insurance companies may or may not have these exclusions and/or limitations in their current policy.

**ATTACHMENT 2**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

## RESIDENTIAL CONTRACTOR EXTENSION A
## HOMEBUILDERS DIVISION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**Exclusion j.** of **Coverage A (Section I)** is hereby replaced by the following:

This insurance does not apply to:

**j.**   "Property damage" to:

   **(1)**   Property you own, rent or occupy;

   **(2)**   Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises.  This exclusion does not apply if the premises are "your work" and were not occupied, rented or held for rental by you for more than a period of 12 consecutive months immediately after completion of the premises;

   **(3)**   Property loaned to you, but this exclusion does not apply to liability assumed under a sidetrack agreement;

   **(4)**   Personal property in your care, custody or control, but this exclusion does not apply to liability assumed under a sidetrack agreement;

   **(5)**   That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arise out of those operations.  This exclusion does not apply to liability assumed under a sidetrack agreement; or

   **(6)**   That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.  This exclusion does not apply to liability assumed under a sidetrack agreement or to "property damage" included in the "products-completed operations hazard".

**ATTACHMENT 2**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

## FUNGUS, MILDEW AND MOLD EXCLUSION

This endorsement modifies insurance provided under the following:

> COMMERCIAL GENERAL LIABILITY COVERAGE PART
> OWNERS AND CONTRACTORS LIABILITY COVERAGE PART
> PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
> RAILROAD PROTECTION LIABILITY COVERAGE PART

This insurance does not apply to:

1. "Bodily injury", "property damage", "personal and advertising injury" or "medical payments" arising out of, resulting from, caused by, contributed to, attributed to, or in any way related to any fungus, mildew, mold or resulting allergens;

2. Any costs or expenses associated, in any way, with the abatement, mitigation, remediation, containment, detoxification, neutralization, monitoring, removal, disposal or any obligation to investigate or assess the presence or effects of any fungus, mildew, mold or resulting allergens; or

3. Any obligation to share with or repay any person, organization or entity, related in any way to items **1** and **2**.

**ATTACHMENT 2**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# TEXAS DISCLOSURE FORM
## SILICA OR SILICA-RELATED DUST

### (EXCLUDING LARGE RISKS)

We (the insurance company) acknowledge that the terms, conditions and coverages provided in this policy have been negotiated in good faith with you (the insured).  You have agreed to accept such terms, conditions and coverages.

The following <u>additional</u> exclusions and/or limitations, which may not have been in your previous policy are included in this policy:

**Type of Coverage**
**<u>Limited or Excluded</u>**

**CG 2196 – Silica or Silica-Related Dust Exclusion**

Other insurance companies may or may not have these exclusions and/or limitations in their current policy.

**ATTACHMENT 2**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# ENHANCED COVERAGE FOR CONTRACTORS

This endorsement modifies insurance provided under the following:

    COMMERCIAL GENERAL LIABILITY COVERAGE PART

**Section I – Coverage A – Bodily Injury And Property Damage Liability,** Item **2. Exclusions**, Paragraph **l. Damage To Your Work** is deleted and replaced by the following:

**2.** **Exclusions**

This insurance does not apply to:

**l. Defective Work**

"Defective Work" includes any and all costs associated with the removal or replacement of the defective, deficient or faulty work.

The following definition is added to **Section V – Definitions**

**23.** "Defective Work" means "Your Work" that is defective, deficient, non-conforming, not in accordance with plans and specifications, fails to satisfy applicable building code(s), fails to meet industry practice standards, is not fit for its intended use, not performed in a workman like manner or is faulty, and is included in the products-completed operations hazard.

**ATTACHMENT 2**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EXCLUSION - ASBESTOS

This endorsement modifies insurance provided under the following:

> COMMERCIAL GENERAL LIABILITY COVERAGE FORM
> OWNERS AND CONTRACTORS LIABILITY COVERAGE FORM
> PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE FORM
> RAILROAD PROTECTIVE LIABILITY COVERAGE FORM

This insurance does not apply to "bodily injury", "property damage", or "personal and advertising injury" arising out of the actual or alleged presence or actual, alleged or threatened dispersal of asbestos, asbestos fibers or products containing asbestos, provided that the injury or damage is caused or contributed to by the hazardous properties of asbestos.  This includes:

    **a.**   Any supervision, instructions, recommendations, warnings or advise given or which should have been given in connection with the above; and

    **b.**   Any obligation to share damages with or repay someone else who must pay damages because of such injury or damage.

All other conditions remain unchanged.

**ATTACHMENT 2**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# AMENDATORY ENDORSEMENT

# EARTH MOVEMENT EXCLUSION

This endorsement modifies insurance provided under the following:

      COMMERCIAL GENERAL LIABILITY COVERAGE PART
      OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
      PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

This insurance does not apply to any "bodily injury" or any  "property damage", that is directly or indirectly caused by, involves, or is in any way connected or related to any movement of earth, whether naturally occurring or due to man-made or other artificial causes.

Movement includes, but is not limited to, settlement, cracking, contraction, compaction, compression, consolidation, subsidence, shrinking, expansion, heaving, swelling, caving-in, erosion, vibration, shock, earthquake, landslide, mudflow, wind-driven, freezing, thawing or any other movement of earth, regardless of the cause.

Earth includes, but is not limited to any dirt, soil, terrain, mud, silt, sediment, clay, rock, sand, fill material or any other substances or materials contained therein.

**ATTACHMENT 2**

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# EXCLUSION - LEAD

This endorsement modifies insurance provided under the following:

> COMMERCIAL GENERAL LIABILITY COVERAGE FORM
> OWNERS AND CONTRACTORS LIABILITY COVERAGE FORM
> PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE FORM

This insurance does not apply to "bodily injury," "property damage," or "personal and advertising injury" arising out of the actual or alleged presence or actual, alleged or threatened dispersal of lead, lead particles or products containing lead, provided that the injury or damage is caused or contributed to by the hazardous properties of lead. This includes:

    **a.**    Any supervision, instructions, recommendations, warnings or advice given or which should have been given in connection with the above; and

    **b.**    Any obligation to share damages with or repay someone else who must pay damages because of such injury or damage.

All other conditions remain unchanged.

**ML 14 39 11 04**          Includes copyrighted material of Insurance Services Office,          **Page 1 of 1**
Inc., with its permission
**ATTACHMENT 2**



# MID-CONTINENT CASUALTY COMPANY

**1437 S. BOULDER P. O. BOX 1409 TULSA OK 74119**

## IN WITNESS CLAUSE

In Witness Whereof, we have caused this Policy to be executed and attested, and, if required by state law, this Policy shall not be valid unless countersigned by our authorized representative.

_____
**President**

_____
**Secretary**

**ATTACHMENT 2**



## MID-CONTINENT GROUP

### THANK YOU

On behalf of our entire team, thank you for choosing to protect the security of your business with an insurance policy from Mid-Continent Group. We take this responsibility seriously, and we're committed to providing you with exceptional service and peace of mind.

We strive to provide prompt, professional and personal attention. The trust and support of valued customers like you and the dedicated agents who represent our products is the foundation of our success. We welcome your suggestions and the opportunity to improve any aspect of our performance. We look forward to earning your business, year after year.

Warmest regards,

*Jim Davis*

James S. Davis, CPCU
President and Chief Operating Officer
Mid-Continent Group